No. 54,351

STATE OF KANSAS, *ex rel.*, Harvey L. Ludwick, Secretary of Human Resources, *Appellant*, v. JOHNSON COUNTY, KANSAS, BOARD OF COUNTY COMMISSIONERS AND JOHNSON COUNTY MED-ACT, *Appellees.*

(661 P.2d 377)

Opinion filed March 26, 1983.

*Reid Stacey,* assistant attorney general, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for the appellant.

*Bruce F. Landeck,* assistant county counselor, argued the cause, and *Lyndus A. Henry,* county counselor, was with him on the brief for the appellees.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought by the State of Kansas on relation of the Secretary of Human Resources to enforce the provisions of the Kansas Minimum Wage and Maximum Hours Law (K.S.A. 44-1201 *et seq.*). The named defendants are the Board of County Commissioners of Johnson County and the Johnson County Med-Act agency.

For purposes of this appeal, the facts in the case are undisputed and essentially are as follows: The State of Kansas, acting through its Secretary of Human Resources, took the assignment of certain wage claims for overtime on behalf of certain employees of the Johnson County Med-Act. A special investigator for the department conducted an audit of the payroll records of the defendant and concluded that the county had underpaid approximately 63 employees by the amount of $28,850.79 from January 1, 1978, to July 1 of that same year. The State demanded that the Med-Act agency pay the overtime compensation allegedly due. The defendants refused. The State then brought this action on behalf of the Med-Act workers pursuant to K.S.A. 44-1211(*b*). In its petition, plaintiff, in substance, claims that the

defendants knowingly and willfully failed to pay overtime wages as required by the Kansas Minimum Wage and Maximum Hours Act. It seeks the recovery of wages, damages, interest, and attorney fees. The State further prays for an injunction to prevent further violations of the wages law by the defendants.

In their answer, defendants raised a number of defenses and then filed a motion for judgment on the pleadings. In support of their motion, defendants rely on the legal proposition that Johnson County is not an "employer" within the meaning of the statutory provisions contained in K.S.A. 44-1202(d) and thus the defendants are not bound by the requirements of the act. It should be noted that there are other defenses raised which are not involved on this appeal. The sole issue for determination is whether Johnson County and its Med-Act agency fell within the statutory definition of an "employer" during the period from January 1, 1978, to July 1, 1978, so that the defendants were bound by the provisions of the minimum wage and maximum hours law (K.S.A. 44-1201 *et seq.*). The district court answered that question in the negative. It granted the defendants' motion for judgment on the pleadings. Plaintiff has brought a timely appeal to this court.

Since the issue presented is strictly one of law and requires a construction of the Kansas Minimum Wage and Maximum Hours law, it would be helpful at the outset to examine the pertinent sections of the act as they existed prior to 1979.

K.S.A. 1978 Supp. 44-1201 provides:

"**Short title.** On and after January 1, 1978, K.S.A. 1977 Supp. 44-1201 to 44-1213, inclusive, shall be known and may be cited as 'the minimum wage and maximum hours law.'"

K.S.A. 1978 Supp. 44-1202(d), (e), and (f) provide:

"(d) 'Employer' means any individual, partnership, association, corporation, business trust *or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee,* but shall not include any employer who is subject to the provisions of the fair labor standards act of 1938 (29 U.S.C.A. § 201 *et seq.*) and any other acts amendatory thereof or supplemental thereto;

"(e) 'Employee' means any individual employed by an employer, but shall not include: (1) Any individual employed in agriculture; (2) any individual employed in domestic service in or about a private home; (3) any individual employed in a bona fide executive, administrative or professional capacity or in the capacity of an outside commission paid salesman, as such terms are defined and delimited by regulations of the secretary; (4) any individual employed by the United States;

(5) any individual who renders service gratuitously for a nonprofit organization as such terms are defined by regulations of the secretary; or (6) persons eighteen years of age or less or sixty years of age or older employed for any purpose of an occasional or part-time basis;

"(*f*) 'Occupation' means employment in any service, trade, business, industry or other gainful employment;" (Emphasis supplied.)

## K.S.A. 1978 Supp. 44-1203 provides:

"(*a*) On and after January 1, 1978, and except as otherwise provided in K.S.A. 1977 Supp. 44-1201 to 44-1213, inclusive, every employer shall pay to each employee wages at a rate of not less than one dollar sixty cents ($1.60) an hour. In calculating such minimum wage rate, an employer may include tips and gratuities received by an employee in an amount not to exceed forty percent (40%) of the minimum wage rate, if such tips and gratuities have customarily constituted part of the remuneration of the employee and if the employee concerned actually received and retained such tips and gratuities. The secretary shall require each employer desiring approval of an allowance for gratuities to provide substantial evidence of the amounts of such gratuities on account of which the employer has taken an allowance pursuant to this section.

"(*b*) The provisions of this section shall not apply to any employers and employees who are covered under the provisions of section 6 of the fair labor standards act of 1938 as amended (29 U.S.C.A. § 206), and as amended by the fair labor standards amendments of 1974 and any other acts amendatory thereof or supplemental thereto."

## K.S.A. 1978 Supp. 44-1204 provides in part as follows:

"(*a*) On and after January 1, 1978, no employer shall employ any employee for a work week longer than forty-six (46) hours, unless such employee receives compensation for employment in excess of forty-six (46) hours in a work week at a rate of not less than one and one-half (1 ½) times the hourly wage rate at which such employee is regularly employed.

"(*b*) No employer shall be deemed to have violated subsection (*a*) with respect to the employment of any employee who is covered by this section, who is engaged in *fire protection or law enforcement activities, including any member of the security personnel in any correctional institution,* and who is paid compensation at a rate of not less than one and one-half (1 ½) times the regular rate at which such employee is employed;

. . . .

"(*c*) The provisions of this section shall not apply to the employment of:

"(1) Any employee who is covered under the provisions of section 7 of the fair labor standards act of 1938 as amended (29 U.S.C.A. § 207), and as amended by the fair labor standards amendments of 1974 and any other acts amendatory thereof or supplemental thereto; or

"(2) Any employee who is primarily engaged in selling motor vehicles, as defined in subsection (*b*) of K.S.A. 1977 Supp. 8-126, for a nonmanufacturing employer primarily engaged in the business of selling such vehicles to ultimate purchasers;

"(3) *Any person who is sentenced to the custody of the secretary of corrections and any person serving a sentence in a county jail.*" (Emphasis supplied.)

## K.S.A. 1978 Supp. 44-1207 provides in part:

"(*a*) On and after January 1, 1978, the secretary shall adopt such rules and regulations as are necessary to carry out the purposes and provisions of K.S.A. 1977 Supp. 44-1201 to 44-1213, inclusive, to prevent the circumvention or evasion thereof and to safeguard the minimum wage and overtime rates established by this act. Such rules and regulations may include, but are not limited to, regulations defining and governing: Outside salesmen; bonuses; part-time rates; special pay for special or extra work; allowances as part of the wage rates applicable under this act for board, lodging and gratuities; other facilities or services furnished by employers and used by employees; and other special items usual in a particular employer-employee relationship.

"(*b*) On and after January 1, 1978, in order to prevent curtailment of opportunities for employment, avoid undue hardship and safeguard the minimum wage rates under K.S.A. 1977 Supp. 44-1201 to 44-1213, inclusive, the secretary also may adopt rules and regulations providing for: (1) *The employment of handicapped workers or patient laborers at state institutions or hospitals* at wages lower than the wage rates applicable under K.S.A. 1977 Supp. 44-1201 to 44-1213, inclusive, under permits and for such periods of time as specified therein; and (2) the employment of learners and apprentices at wages lower than the wage rates applicable under this act, under permits and subject to such limitations on number, proportion, length of learning period, occupations and other conditions as the secretary may prescribe." (Emphasis supplied.)

The other sections of the act are not relevant to the issue now before us. Before examining these statutory provisions, it would also be helpful to consider the history of the legislation and subsequent amendments thereto. In 1938, Congress enacted the Fair Labor Standards Act of 1938 which required employers to pay employees a set minimum wage and to pay wages at a higher rate for hours worked in excess of a set number of hours or overtime. The present act is codified in 29 U.S.C.A. §§ 206, 207. Prior to 1966, the sovereign states and their subdivisions were exempt under the act. Congress removed that exemption for employees of hospital, institutions, and schools in 1966. In 1968, a number of states challenged the validity of the law. It was upheld by the United States Supreme Court in *Maryland v. Wirtz,* 392 U.S. 183, 20 L.Ed.2d 1020, 88 S.Ct. 2017 (1968). In 1974, Congress again broadened the act's scope of coverage of state employees, and another challenge was brought by the states to the Supreme Court. In *National League of Cities v. Usery,* 426 U.S. 833, 49 L.Ed.2d 245, 96 S.Ct. 2465 (1976), the Supreme Court, by a five-to-four decision, struck out the language in the act as it applied to employees of states and their

political subdivisions on the basis that Congress had exceeded its powers under the commerce clause of the United States Constitution, Article 1, Section 8, Clause 3. In 1977, following *Usery*, the Kansas legislature enacted the Kansas Minimum Wage and Maximum Hours Law. Thereafter, certain counties raised the issue whether the Kansas act applied to them. In March of 1978, the attorney general, Curt T. Schneider, issued an attorney general opinion concluding that the legislative intent was to include counties as employers under the act. Att'y. Gen. Op. No. 78-123.

In the spring of 1979, the legislature considered proposed amendments to the act and granted a special exemption to emergency medical technicians, such as those employed by Johnson County in its Med-Act Department. Specifically, the 1979 legislature in Laws of 1979, Chapter 162, amended 44-1204(*b*) to exempt employees engaged in the public or private delivery of emergency medical services as a crash injury management technician, emergency medical technician or mobile intensive care technician. Those employees were added to previously exempt employees engaged in fire prevention and law enforcement activities. In the same chapter, the legislature also amended 44-1202 to exempt as employees under the act "any individual employed by a unified school district in an executive, administrative or professional capacity, if the individual is engaged in such capacity fifty percent (50%) or more of the hours during which the individual is so employed." K.S.A. 44-1202(*e*)(7). The exemptions of those employees included in the 1979 amendments to the act were effective on publication of the enactment in the official state paper on April 26, 1979.

In May 1979, the assistant county counselor of Johnson County requested an opinion from the attorney general regarding the applicability of K.S.A. 1978 Supp. 44-1201 *et seq.* to county governments. Attorney general Robert T. Stephan, in Att'y. Gen. Op. No. 79-97, answered the question in the affirmative. The Board of County Commissioners of Johnson County disagreed with this opinion and refused to recognize the claims for wages of the emergency medical personnel involved in the case now before us.

With these matters in mind, we now turn to a determination of the basic issue in the case. There are certain rules of statutory

construction which are to be applied by the courts in determining the purpose and intent of the legislature in statutory enactments. The fundamental rule of statutory construction, to which all others are subordinate, is that the purpose and intent of the legislature governs when that intent can be ascertained from the statute, even though words, phrases or clauses at some place in the statute must be omitted or inserted. In determining legislative intent, courts are not limited to a mere consideration of the language used, but look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished and the effect the statute may have under the various constructions suggested. In order to ascertain the legislative intent, courts are not permitted to consider only a certain isolated part or parts of an act but are required to consider and construe together all parts thereof *in pari materia.* When the interpretation of some one section of an act according to the exact and literal import of its words would contravene the manifest purpose of the legislature, the entire act should be construed according to its spirit and reason, disregarding so far as may be necessary the literal import of words or phrases which conflict with the manifest purpose of the legislature. These principles are recognized in *Brown v. Keill,* 224 Kan. 195, 199-200, 580 P.2d 867 (1978).

In determining legislative intent in this case, the district court apparently considered in isolation only the statutory definition of "employer" as contained in K.S.A. 44-1202(*d*). The court concluded that, since the legislature did not see fit to *specifically* include counties within the definition of employer, it must have intended that they be excluded from the application of the act. We have considered the history and circumstances which existed at the time the act was enacted along with the various sections of the act in their entirety and have concluded that counties do fall within the definition of "employer," and, therefore, are subject to the provisions of the act. We agree that the definition of "employer" contained in K.S.A. 44-1202(*d*) does not *specifically* include counties. That, however, is not controlling.

The legislature by K.S.A. 77-201 has established certain rules of statutory construction to be observed unless such construction would be inconsistent with the manifest intent of the legislature or repugnant to the context of the statute. Specifically, K.S.A. 77-201 *Thirteenth* provides as follows:

"*Thirteenth.* The word 'person' may be extended to bodies politic and corporate."

In K.S.A. 19-101, it is stated that each organized county within this state shall be a body corporate and politic. As noted above, the term "employer" as contained in K.S.A. 44-1202(*d*) was written to include any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee. Applying K.S.A. 77-201, the word "person" may be extended to include counties and other political subdivisions provided the act can be construed to establish that was the intent of the legislature.

In construing the Kansas Minimum Wage and Maximum Hours Law, we are required to consider the act in its entirety in arriving at the legislative intent. When we examine the various sections of the act, it is clear to us that the legislature intended to include counties within the definition of an "employer" and that the act should apply to them. The act excludes certain specifically named employees of governmental agencies:

(1) Employees engaged in fire prevention and law enforcement activities (K.S.A. 44-1204[*b*]);

(2) Persons sentenced to the custody of the secretary of corrections and any person serving a sentence in a county jail (K.S.A. 44-1204[*c*][3]);

(3) The employer of handicapped or patient workers at *state institutions* (K.S.A. 44-1207[*b*][1]);

(4) Any individual employed by the *unified school district* in an executive, administrative or professional capacity, if the individual is engaged in such capacity fifty percent or more of the hours during which the individual is so employed (K.S.A. 44-1202[*e*][7], as amended in 1979);

(5) Employees engaged in the *public* or private delivery of emergency medical services (K.S.A. 44-1204[*b*] as amended in 1979).

Obviously these categories involve employees who labor at the municipal, county, or state levels. By excluding only these employees, it logically follows that the legislature intended the minimum wage and maximum hours law to cover other employees of the state, counties, and other political subdivisions.

In 1979, the attention of the legislature was directed to the question of the desirability of excluding employees engaged in the public and private delivery of emergency medical services. If the legislature had intended that the minimum wage and maximum hours law not apply to any public employees, it could easily have amended the statute at that time to specifically exclude the State and the various political subdivisions from the definition of "employer" in K.S.A. 44-1202(*d*). It did not choose to do so. Instead it amended the statute to exclude only certain categories of governmental employees from the operation of the act.

Based upon the rationale set forth above, we hold that a county and its agencies, such as an emergency medical service agency, are employers within the meaning of K.S.A. 44-1202(*d*) and are subject to the application of the Kansas Minimum Wage and Maximum Hours Law.

We wish to emphasize that we have decided only the issue presented on this appeal and that there may be other factual issues or issues of law in the case which must be determined in the district court. We, therefore, reverse and remand the case to the district court for further proceedings.