No. 59,958

CHARLES DOLLISON, *Appellant/Cross-Appellee*, v. OSBORNE COUNTY, KANSAS, *Appellee/Cross-Appellant.*

(737 P.2d 43)

Opinion filed May 1, 1987.

*Jerry L. Harrison*, of Noah & Harrison, P.A., of Beloit, argued the cause and was on the brief for appellant/cross-appellee.

*Vernon L. Steerman*, county attorney, argued the cause and was on the brief for appellee/cross-appellant.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Charles Dollison (plaintiff) brought this civil action against defendant Osborne County to collect overtime pay and termination benefits. The trial court granted plaintiff's claim for termination benefits and denied his claim for overtime pay. Both parties appeal.

Charles Dollison was employed as undersheriff of Osborne County from September 1, 1980, to January 14, 1985. His employment was terminated after the election of a new sheriff in 1984.

During his employment as undersheriff, Dollison worked approximately nine hours a day for seven consecutive days, followed by three days off. Thus, he worked a maximum of 22 days per month. Often he would be required to work overtime and, until 1982, the county compensated him with overtime pay of time-and-a-half for all hours worked in excess of 258 hours per month. In 1982, the county secured Dollison's written agreement to waive his right to overtime pay. After this agreement, Dollison continued to work overtime and was not given overtime pay by the county.

During the time of Dollison's employment, Osborne County employed, in addition to the sheriff and undersheriff, one other full-time certified law enforcement officer. The county also employed five deputies as dispatchers, three full-time and two part-time.

The other four to five employees of the sheriff's department were often deputized. Their duties included radio communications, taking care of prisoners, and assisting in arrests and serving warrants. They were not inherently authorized to make arrests and were not armed, but they could be authorized to make arrests and participated in assisting arrests by other officers. They also occasionally attended law enforcement seminars; but none of them ever completed an official law enforcement officer certification program.

After his termination, Dollison sought compensation from the county commissioners for his overtime work and for accrued vacation time; he was refused. On April 19, 1985, Dollison filed

suit in Mitchell County District Court. The action was transferred to Osborne County on June 6, 1985, and on July 28, 1986, the district court ruled by memorandum opinion that Dollison was entitled to receive accrued vacation benefits but not overtime compensation.

Defendant Osborne County initially raises two issues in its cross-appeal, attacking the trial court's decision on jurisdictional grounds.

The defendant first contends that it is not bound by the decision of the district court since, by the original captioning of the action as "Charles Dollison v. Osborne County, Kansas," it was not made a "de jure party" and thus the court lacked "subject matter jurisdiction." If there is a defect in the captioning of the case, it would relate only to personal jurisdiction, not subject matter jurisdiction.

K.S.A. 19-105 provides: "In all suits or proceedings by or against a county, the name in which the county shall sue or be sued shall be 'The board of county commissioners of the county of _____.' " The defendant relies entirely upon *Withers v. Root*, 146 Kan. 822, 73 P.2d 1113 (1937), in support of its contention. This reliance is misplaced.

In *Withers. v. Root*, this court stated that the "board of county commissioners constitutes the governing body of the county. [Citation omitted.] The judgment could not bind the county unless it was a party to the action." 146 Kan. at 826. However, *Withers* was decided under a factual situation not applicable to the present case. In *Withers*, the plaintiff had originally brought suit not against the county but against the county treasurer. The county commissioners in *Withers* were not served with process, were not made parties to the action, and did not receive notice of the action until after judgment had been rendered in favor of the plaintiff. 146 Kan. at 823. The court in *Withers* expressly noted:

"Process was not served on the county as required by law (G.S. 1935, 19-106), or in any other manner.

"There are some statements in the brief of plaintiff to the effect that the county attorney was in the action from the beginning. The record discloses only that he represented the county treasurer. The record in no wise discloses he represented the board of county commissioners or that any motion or pleading was ever filed in its behalf by anyone." 146 Kan. at 826.

In the present case, the record is clear that the county attorney

had been involved in the action from the very beginning. The county attorney answered the plaintiff's petition "For and in Behalf of Defendant." The answer expressly admits the identity of the defendant contained in paragraph 2 of the petition, which provides:

"2. Defendant is a county in the State of Kansas whose present county commissioners are as follows:

Wayne L. Green
126 N. 2nd
Osborne, Kansas 67473

Donald S. Kiper
19 Circle Drive
Downs, Kansas 67437

Eugene Smith
Paradise, Kansas 67658."

Unlike *Withers*, the record precludes Osborne County from arguing that it had no notice of the proceedings against it and was unable to defend its position prior to judgment. The present case more clearly resembles *Staley v. Espenlaub*, 127 Kan. 627, 274 Pac. 261 (1929). In *Staley*, the plaintiffs had sued Wyandotte County in ejectment. The county answered but did not use the statutory designation prescribed for suits by or against counties. The trial court granted judgment for the county. The plaintiffs sought to set aside the judgment on the grounds that the answer had failed to use the statutory designation. This court stated: "While the precise statutory name by which the county should have been sued, 'The board of county commissioners of the county of Wyandotte' [citation omitted], was not used, identity of the defendant was unmistakable." 127 Kan. at 631. The court continued: "The subject of who was answering was made very plain by the amended answer, and the court concludes its discussion of this rather trivial subject by announcing that the county was sued, the county answered, and the county recovered judgment." 127 Kan. at 631.

Moreover, the argument that a county has not been correctly designated may be waived. In *Railroad Co. v. Saline County*, 69 Kan. 278, 76 Pac. 865 (1904), the plaintiff sued the county commissioners of Saline County but failed to use the exact statutory designation. This court held that the county waived the

argument of improper designation by such actions as: (1) The county's filing an answer admitting the defendants were acting as county commissioners, (2) the county attorney's signing the answer as "county attorney," and (3) the county's filing subsequent pleadings which do contain the correct statutory designation. 69 Kan. at 280-81. The court concluded:

"The issue was one affecting the county, the officers charged with the duty of representing the county in its litigation appeared and presented that issue to the court, and the result was a judgment against the county. It is too late to say that the misnomer of the defendant in some of the pleadings nullified the judgment or relieved the county from its effect." 69 Kan. at 282.

In the present case, the answer filed admitted the defendant was the county, the pleadings of the defendant are consistently signed by Mr. Steerman with the accompanying designation of "County Attorney," or "Osborne County Attorney," and the defendant filed Recommended Findings of Facts and Conclusions of Law which used the correct designation, "The Board of County Commissioners of the County of Osborne, Kansas." We find the defendant waived any defense that might have existed.

After the present action was filed in Mitchell County, the defendant moved to dismiss, alleging forum non conveniens. The Mitchell County court transferred the case to Osborne County. The defendant contends that the Osborne County District Court was without jurisdiction to hear the case.

Defendant relies entirely upon *Quillin v. Hesston Corp.*, 230 Kan. 591, 640 P.2d 1195 (1982). In *Quillin*, the plaintiff was a resident of Missouri while the defendant was a Kansas corporation with its principal place of business in Harvey County. The plaintiff filed suit in Johnson County which, on defendant's motion of forum non conveniens, transferred the case to Sedgwick County. This court in *Quillin* held that, under the common law doctrine of forum non conveniens, the initial court may only dismiss the action; it may not transfer the action to a more convenient forum.

*Quillin* was decided under the *common-law* doctrine of forum non conveniens. 230 Kan. at 594. The court found no authority for transfer of an action, as opposed to dismissal, under cases applying the common-law doctrine. The court stated:

"The federal courts have long recognized the doctrine of forum non conven-

iens and have repeatedly declined to exercise jurisdiction under the doctrine. The result thereof was invariably dismissal *until the enactment of 28 U.S.C. § 1404 (a)*. The change resulting from the statute is discussed in the annotation following 10 A.L.R. Fed. 352 as follows:

" 'The essence of the common-law doctrine of forum non conveniens is that even when an action is brought in a court which has jurisdiction of the cause and of the parties and in which venue is proper, the court may decline to exercise jurisdiction and dismiss the action if another forum would be more convenient. While this doctrine has been recognized and applied in the federal courts, an important change in the application of the doctrine in federal cases has been made by 28 USC § 1404(a), which provides: "[F]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The basic change, obviously, is that the remedy for forum non conveniens under the statute is a transfer to a convenient forum, whereas the remedy under the common-law doctrine is a dismissal.' " (Emphasis added.) 230 Kan. at 594.

The *Quillin* court then analyzed possible Kansas statutory authority for transfer and concluded none applied. Since the only possible basis for the Johnson County District Court's action was common law forum non conveniens, dismissal and not transfer was required.

However, the statutory authority that was lacking in *Quillin* is no longer absent. K.S.A. 60-609 (Weeks) provided, at the time of the *Quillin* case, only for transfer of venue where the original county could not provide a "fair and impartial trial." Transfers for purposes of convenience alone did not have statutory authorization.

Shortly after the court's 1982 decision in *Quillin*, the legislature amended K.S.A. 60-609 in 1983 to add new subsection (a), which provides:

"Upon the motion of a party, a district court may transfer any civil action to any county where it might have been brought, after due consideration of the right of the plaintiff to choose the place of the action and a finding that a transfer will serve the convenience of the parties and witnesses and the interests of justice."

With the existence of K.S.A. 60-609(a), transfer and not dismissal should be the preferred means of dealing with inconvenient venue where the alternate forum is another county within this state. Moreover, it is difficult to see how defendant Osborne County can complain of prejudice by the transfer to Osborne County in that defendant's forum non conveniens motion to dismiss contended that Osborne County was a reasonable venue for the action.

We turn now to the primary issue raised by plaintiff in this appeal. He contends that the failure of the county to pay overtime wages was a violation of the Kansas Minimum Wage and Maximum Hours Law (KMWMHL). K.S.A. 44-1201 *et seq.* This statute is the state counterpart to the federal Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* (1982).

In this case, there are three possible exemptions from the overtime protections of the KMWMHL or the FLSA. The district court reached its decision on the basis of the first, 29 U.S.C. § 213(b)(20) (1982), which exempts law enforcement organizations which employ fewer than five persons. The second exemption, 29 U.S.C. § 203(e)(2)(C)(i) and (ii)(II) (1982), exempts employees of governmental subdivisions who are not covered by civil service and are on the personal staff of a publicly elected officer. The final exemption excludes persons who are employed in an administrative capacity. 29 U.S.C. § 213(a)(1); K.S.A. 44-1202(e)(3). The trial court failed to distinguish between exemptions which apply only to the federal FLSA and exemptions which apply to both the FLSA and the KMWMHL. Of the exemptions cited above, only the last, the "administrative" employee exemption, could exclude Dollison from coverage of both the FLSA *and* the KMWMHL.

The district court addressed only one of the exemptions. It found that the Osborne County Sheriff's Department fell within the fewer than five employees exemption, and that "[t]herefore, the provisions of the Fair Labor Standards Act would not apply and the County would not be obliged to pay overtime pay to the plaintiff."

The KMWMHL provides protections for many workers in the state by ensuring that they cannot be compelled to work overtime without fair compensation:

"On and after January 1, 1978, no employer shall employ an employee for a work week longer than forty-six (46) hours, unless such employee receives compensation for employment in excess of forty-six (46) hours in a work week at a rate of not less than one and one-half (1 ½) times the hourly wage rate at which such employee is regularly employed." K.S.A. 44-1204(a).

The law also provides for overtime pay protection for law enforcement persons, although the hours worked requirement is higher:

"No employer shall be deemed to have violated subsection (a) with respect to the employment of any employee who is covered by this section, who is engaged in the public or private delivery of emergency medical services as a crash injury management technician, emergency medical technician or mobile intensive care technician, or who is engaged in fire protection or *law enforcement activities*, including any member of the security personnel in any correctional institution, and who is paid compensation at a rate of not less than one and one-half (1½) times the regular rate at which such employee is employed:

"(1) In any work period of twenty-eight (28) consecutive days in which such employee works for tours of duty which in the aggregate exceed two hundred fifty-eight (258) hours; or

"(2) in the case of any such employee to whom a work period of at least seven (7) but less than twenty-eight (28) days applies, in any such work period in which such employee works for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in such work period as two hundred fifty-eight (258) hours bears to twenty-eight (28) days." (Emphasis added.) K.S.A. 44-1204(b).

All persons who are employed by an employer, with limited exceptions, are protected by this law. The KMWMHL excludes from its otherwise all-inclusive definition of "employee" anyone who is "employed in a bona fide executive, administrative or professional capacity." K.S.A. 44-1202(e)(3). "Employers" subject to the law are defined on a similarly all-inclusive basis, K.S.A. 44-1202(d), and this court has held that the law was intended to apply to counties and their agencies. *State ex rel. Ludwick v. Board of Johnson County Comm'rs*, 233 Kan. 79, Syl. ¶ 2, 661 P.2d 377 (1983).

However, the Kansas law does not apply to "employers" who are obliged to meet the standards of the FLSA:

" 'Employer' means any individual, partnership, association, corporation, business trust or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee, but *shall not include any employer who is subject to the provisions of the fair labor standards act of 1938* (29 U.S.C.A. § 201 *et seq.*) and any other acts amendatory thereof or supplemental thereto." (Emphasis added.) K.S.A. 44-1202(d).

Those exemptions to overtime pay such as 29 U.S.C. § 203(e)(2)(C) (the "personal staff" exemption) and 29 U.S.C. § 213(b)(20) (the fewer than five law enforcement officers exemption) which apply only to the FLSA are not relevant to the present case. Even if the requirements of these exemptions were

met by the facts of this case, it would exclude plaintiff only from the protections of the FLSA; it would not exclude him from the KMWMHL. The effect of plaintiff's falling within either of the above exemptions would mean only that the employment relationship was not "subject to the . . . fair labor standards act of 1938." K.S.A. 44-1202(d). The county therefore could still fall within the less generous but still binding overtime pay requirements of the KMWMHL.

Osborne County in its brief consistently referred to the KMWMHL as "incorporating" the provisions of the FLSA. The Kansas law does no such thing. Provisions of the KMWMHL, K.S.A. 44-1202(d), -1203(b), and -1204(c)(1), exclude from the state law only those employment relationships governed by the FLSA. If an employment relationship is excluded from the FLSA, it would *not* be excluded from the KMWMHL (assuming there is no independent basis for excluding the relationship from the state law). Of the exemptions relevant to this case, only the 44-1202(e)(3) "administrative" employee exemption would serve to exclude plaintiff's employment from *both* the federal law and the state law.

The trial court never addressed this issue and decided the case solely on the basis of the FLSA even though the basis of Dollison's petition was a violation of the KMWMHL. Defendant Osborne County attempts to argue that, despite the plain meaning of the state law, the legislature intended the KMWMHL to "incorporate" all the provisions of the FLSA. The only basis Osborne County advances for this argument is a comparison of K.S.A. 44-1204(a) (requiring overtime pay for work in excess of 46 hours per week) with 29 U.S.C. § 207(a)(2)(C) (1982) (requiring overtime pay for work in excess of 40 hours per week) and a comparison of K.S.A. 44-1204(b) (requiring overtime pay for law enforcement officers working over 258 hours per 28 consecutive working days) with 29 U.S.C. § 207(k) (requiring overtime pay for law enforcement officers working over 216 hours per 28 consecutive working days). Osborne County then concludes the Kansas legislature did not intend to be "as generous" as the FLSA. It is, of course, obvious that the KMWMHL is not as generous in some of its provisions as the FLSA, but to infer from this that the Kansas legislature intended to "incorporate" all the

exceptions and exemptions contained throughout the FLSA defies all logic.

It may be that an employee is required to work longer before he qualifies for overtime pay under the KMWMHL than under the FLSA, but this does not detract from the plain wording of the Kansas law. If an employment relationship is excluded from the FLSA under an exemption that is unique to the federal law, the employee would still be subject to the KMWMHL, although he or she might have to work additional hours before being eligible for overtime pay.

In addition to the plain wording of the state law, several other arguments support this conclusion. First, the argument advanced by Osborne County would make the KMWMHL and the FLSA coextensive, effectively nullifying the state law. The KMWMHL now expressly excludes all that is included within the FLSA. The "incorporation" argument advanced by Osborne County would mean that the KMWMHL would also exclude all that is exempted from the FLSA, leaving nothing for the Kansas law to act upon.

Second, prior to 1974, the provisions of the FLSA were not applied to state and local government employees. 29 U.S.C. § 203(d) (1940). Amendments to the FLSA in 1974 expanded its coverage and included "public agencies" within its definition of employers subject to the Act. 29 U.S.C. § 203(d) (Supp. IV 1974). In 1976, the United States Supreme Court held, in *National League of Cities v. Usery*, 426 U.S. 833, 49 L. Ed. 2d 245, 96 S. Ct. 2465 (1976), that the expansion of the FLSA to cover state and political subdivision employees engaged in traditional government functions was unconstitutional as a violation of the Tenth Amendment. In the wake of *National League*, Kansas adopted the KMWMHL in 1977. The KMWMHL was, in part, closely modeled on the FLSA and the legislature expressly included in the law the "administrative" employee exemption of the FLSA. 29 U.S.C. § 213(a)(1); K.S.A. 44-1202(e)(3). However, the legislature did not adopt the other exemptions in the FLSA for small law enforcement departments or for "personal staff" employees. 29 U.S.C. §§ 203(e)(2)(C), 213(b)(20). Both of these exemptions had been added to the FLSA in 1974 (Pub. L. No. 93-259, § 6[a][2], [c][2][B], 88 Stat. 58, 61 [1974]) prior to the 1977

enactment of the KMWMHL and were available for inclusion in the KMWMHL if the Kansas legislature had wished to do so. Since the state legislature included some exemptions contained in the FLSA but excluded others, the obvious implication is that the legislature did not intend for the excluded exemptions to be a part of the Kansas law. In *Ludwick*, 233 Kan. at 86, the court noted that, in the 1979 amendments to the KMWMHL, the legislature had exempted certain classes of public employees from the law but had not exempted all public employees.

"By excluding only these [particular classes of] employees, it logically follows that the legislature intended the minimum wage and maximum hours law to cover other employees of the state, counties, and other political subdivisions.

". . . . If the legislature had intended that the minimum wage and maximum hours law not apply to any public employees, it could easily have amended the statute at that time to specifically exclude the State and the various political subdivisions from the definition of 'employer' in K.S.A. 44-1202(*d*). It did not choose to do so. Instead it amended the statute to exclude only certain categories of governmental employees from the operation of the act." 233 Kan. at 85-86.

Here, the legislature did not choose to include exemptions comparable to the FLSA exemptions for small law enforcement agencies or "personal staff" employees.

Of the exemptions advocated by the county, only the exemption for "administrative" employees could exclude the plaintiff from *both* the FLSA *and* the KMWMHL. K.S.A. 44-1202(e)(3) excludes from the KMWMHL "any individual employed in a bona fide executive, administrative or professional capacity or in the capacity of an outside commission paid salesman, as such terms are defined and delimited by regulations of the secretary." This exemption is almost identical to the federal exemption which excludes:

"any employee employed in a bona fide executive, administrative, or professional capacity (including any employee employed in the capacity of academic administrative personnel or teacher in elementary or secondary schools), or in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary." 29 U.S.C. § 213(a)(1).

The trial court incorrectly found that the less than five law enforcement employees exemption of the FLSA precluded recovery by the plaintiff. Although the U.S. Supreme Court, in *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 83 L. Ed. 2d 1016, 105 S. Ct. 1005 (1985), overruled *National League*

and makes the FLSA applicable to defendant Osborne County, the decision is not retroactively applied. Nor does the plaintiff base his claim on the provisions of the FLSA; plaintiff's claim is for overtime pay earned prior to the effective date of *Garcia*, and neither party claims *Garcia* is applicable to the present case.

The trial court erred in ruling that, because the provisions of the FLSA did not apply, the plaintiff was precluded from recovering overtime pay from the defendant. The ruling ignores the fact that plaintiff's petition was grounded in a violation of the KMWMHL, not the the FLSA. The trial court did not consider whether the plaintiff was an "administrative" employee and, therefore, the case must be remanded to determine if plaintiff is an administrative employee and therefore exempt from the provisions of KMWMHL.

We turn now to defendant Osborne County's claim that the district court erred in its assessment of vacation benefits owed to the plaintiff. At the time of his termination, plaintiff had accumulated 13½ unpaid working days and 30 days' vacation leave. According to the county clerk, the county determined plaintiff's accrued vacation benefits by dividing his monthly salary of $1,420.00 by 31 days ($45.81 per day) for a total of $1,992.74. The district court held that this method of calculation was improper and required, as to the vacation benefits, that the county pay on a basis of $1,420.00 divided by 22 days ($64.55 per day).

Neither appellant nor appellee cites any authority for its position. The method used by the district court does not seem unreasonable. The defendant concedes that no county policy exists for computing termination or vacation pay. Had plaintiff used all 30 days of vacation leave, he would have been able to take off one full month (since he worked an average of 22 days per month) and eight working days the following month; he would have been entitled to receive pay for the entire period. The effect of the county's position would be to allow plaintiff vacation pay only for one month even though he had well over a month (in working days) accumulated. The district court's method of determining vacation pay was proper.

Defendant Osborne County finally contends that the court was without authority to grant the costs and argues this may be done under K.S.A. 44-1211(b) only where the court finds a violation of

the KMWMHL. Since the trial court found no violation of the KMWMHL in this case, the county argues it could not grant costs.

We disagree. K.S.A. 44-1211(b) does allow costs and attorney fees to be awarded if the KMWMHL is violated. But the trial court expressly rejected the plaintiff's motion for attorney fees and granted only *costs*. Statutory authority exists for the granting of costs, independent of K.S.A. 44-1211(b). K.S.A. 60-2002(a) grants the trial judge the discretion to grant costs "to the party in whose favor judgment is rendered." Here, the plaintiff was granted judgment in the reevaluation of the accrued vacation benefits. There is nothing to indicate an abuse of discretion in granting costs to the plaintiff.

The judgment is affirmed in part and reversed in part. The case is remanded to the district court with directions to proceed in accordance with the views expressed herein.