**Todd W. CLEMENTS, Plaintiff,**

v.

**EMERY WORLDWIDE AIRLINES, INC., Defendant.**

No. 97–4217–DES.

United States District Court,
D. Kansas.

March 8, 1999.

against Feeney as she was not the plan ad-

ministrator when the penalty period began.

Jerald R. Long, Mission, KS, for Todd W. Clements, plaintiff.

John J. Yates, Stephen M. Bledsoe, Bryan Cave LLP, Kansas City, MO, for

Emery Worldwide Airlines, Inc., defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendant's Motion for Summary Judgment (Doc. 34). Both parties have filed briefs on this issue and the court is ready to rule.

## I. FACTUAL BACKGROUND

The plaintiff initiated this case seeking overtime wages he claims he is entitled to under the Kansas Minimum Wage and Maximum Hours Law ("KMWMHL"), Kan.Stat.Ann. § 44–1204(a) and for a statutory penalty under the Kansas Wage Payment Statute, Kan.Stat.Ann. § 44–315(b). The defendant claims that Kansas law is not applicable under the facts of this case, and therefore does not afford the plaintiff relief. In the alternative, the defendant argues that the KMWMHL, by its own terms, excludes the defendant from its coverage.

The plaintiff was employed by the defendant Emery Worldwide Airlines ("EWA") from December 23, 1991, until his termination on December 16, 1996. EWA is a common carrier of commercial air freight with its corporate headquarters in Vandalia, Ohio, and its flight hub at the Dayton Airport in Dayton, Ohio. EWA is an employer engaged in interstate commerce within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. The plaintiff was an employee engaged in interstate commerce within the meaning of the FLSA while employed by EWA.

On September 12, 1991, the plaintiff indicated his interest in employment with EWA by faxing a copy of his resume to Dick Hickey in Dayton, Ohio. EWA then telephoned the plaintiff at his home in Lenexa, Kansas, to express interest in hiring him. The plaintiff was informed that he would have to pass a physical exam and a drug screen, as well as complete other employment processing in Dayton, Ohio. EWA flew the plaintiff to Dayton, Ohio, towards the end of November 1991. While in Ohio, the plaintiff completed an application form, passed the physical exam, and was informed that he would be given the job if he passed the drug screen.

In December 1991, EWA called the plaintiff at his home in Lenexa, Kansas, to inform him that he had passed the drug screen and would be employed as a casual Airframe and Powerplant Mechanic ("A & P Mechanic") stationed at Kansas City International Airport ("MCI"), located in Kansas City, Missouri. The plaintiff reported to work at MCI on or about December 23, 1991, as a casual, non-exempt A & P mechanic at a rate of pay of $15 per hour. In November 1992, the plaintiff's status changed from that of Casual A & P Mechanic to Regular A & P Mechanic. This change resulted in a decrease in his hourly wage to $14 per hour, but made him eligible for employee benefits. He continued to do the same work he had done before at MCI.

In November 1992, while at MCI, the plaintiff received a faxed job posting for an available position as a Maintenance Representative. This was a position in which the plaintiff had frequently expressed interest to his supervisors. The plaintiff filled out a bid form, signed it, attached a copy of his resume to the bid form and faxed it back to the Human Resources Department of EWA in Dayton, Ohio. In December 1992, EWA's Manager of Maintenance Control in Dayton, Ohio, called the plaintiff at his home in Lenexa, Kansas, to advise him that he had been selected for the Maintenance Representative position. The promotion to Maintenance Representative resulted in a change in the plaintiff's salary from $14 per hour to $672 per week, with scheduled increases to bring his weekly wage to $738. The plaintiff's promotion was effective February 14, 1993. Because no replacement had been found for him as the mechanic at MCI, his first assignment was a temporary duty assignment to serve as the mechanic at MCI. The plaintiff's first assignment accompanying aircraft as a Maintenance Representa-

tive occurred during the period Friday, March 26 through Monday, March 29, 1993. He traveled from MCI to Dayton and from there to Philadelphia, where he met up with his charter for the weekend.

During the plaintiff's employment with EWA, he never performed any work in the state of Kansas. The parties dispute whether the plaintiff's base was considered his home in Lenexa, Kansas, or Dayton, Ohio.

These facts are either uncontroverted or are viewed in a light most favorable to the plaintiff, the non-moving party. Additional facts will be discussed below, when necessary.

## II. STANDARD FOR SUMMARY JUDGMENT

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248, 106 S.Ct. 2505. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477

U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. 2548.

Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (interpreting Fed. R.Civ.P. 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. 2548. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. 2548.

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., U.S. v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues"). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. 2505.

## III. DISCUSSION

EWA expresses two arguments as to why it is entitled to summary judgment on

the plaintiff's claims. First, EWA claims that Kansas law does not apply to this case. Second, EWA claims that even if Kansas law does apply, EWA is exempt from the coverage of the KMWMHL by the terms of the statute itself. The court will address each of these issues in turn.

■ All of the plaintiff's claims for unpaid overtime relate to work completed after he was promoted to the Maintenance Representative position. When an employee is promoted to a new and distinct position, a new contract for employment is created. *Patterson v. McLean*, 491 U.S. 164, 185, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Both parties agree that when the plaintiff was promoted to Maintenance Representative, a new contract was created. Therefore, this opinion will only discuss events happening after the promotion.

## A. CHOICE OF LAWS

■ Because this case is before the court on diversity of citizenship, the choice of laws rules for the state of Kansas will determine which state's substantive law should be applied. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Kansas choice of laws rules are based on the Restatement of Conflict of Laws. For purposes of contract construction, Kansas follows the theory of *lex loci contractus* —the place of the making of the contract controls. *Gillespie v. Seymour*, 19 Kan. App.2d 754, 876 P.2d 193, 200 (1994). Under this approach, the court looks to where the last act necessary for the creation of the contract takes place, and that state's law controls. In employment situations, this will generally be the place where the employee accepts the job offer. On issues of contract performance, the state where the performance was to take place controls. Restatement of Conflict of Laws § 358.

■ The defendant contends that the issues in this case concern the performance of the contract, and should, there-fore, be governed by the law in the state where the plaintiff was to perform the contract. The issues in this case are centered around what was legally required under the employment contract. This case involves what the terms of the contract were, not whether they were performed or performed sufficiently. This is a case of contract construction, not contract performance. Therefore, the law of the state where the contract was created will govern the issues in this case.

■ The defendant claims that Missouri law should apply because the plaintiff was unable to accept the job offer until he reported to work at MCI. This claim is based on a theory that at-will employment contracts are unilateral in nature and can only be accepted by performance. In support of this claim, EWA cites secondary sources and case law from other states. The plaintiff relies on Kansas case law to support a claim that the employment contract was formed when he verbally accepted the job offer from EWA at his home in Kansas.

The plaintiff cites two Kansas cases which support his claim that Kansas law applies under the Kansas choice of laws rules. In *Pearson v. Electric Service Co. of Pensacola*, 166 Kan. 300, 201 P.2d 643 (1949), the Kansas Supreme Court applied the Kansas choice of laws rules to find that Tennessee law should govern a workers compensation case. In *Pearson*, the plaintiff was in Tennessee when she was offered a job in Kansas over the telephone. She accepted the job over the telephone and moved to Kansas to begin the job. The court held that because the employee accepted the job over the telephone while in Tennessee, the contract was formed in Tennessee and Tennessee law would govern the case. *Pearson*, 201 P.2d at 644. The court based its finding on the Restatement, Conflict of Laws, § 326, and numerous Kansas cases holding that a contract is formed where the last act giving rise to the contract is performed. *Id.*

The reasoning of the *Pearson* court was followed in *Hartigan v. Babcock & Wilcox Co.*, 191 Kan. 331, 380 P.2d 383 (1963). In *Hartigan*, the plaintiff was living in Kansas when he was called by the defendant from Missouri. The defendant offered the plaintiff a job, which the plaintiff accepted over the telephone in Kansas. The plaintiff was injured while working in Missouri. The court held that because the contract for employment was formed in Kansas, Kansas law would apply to the claim.

The defendant claims that because both *Hartigan* and *Pearson* are workers compensation cases they should not be controlling in this case. The defendant correctly points out that the workers compensation laws in Kansas have their own choice of laws rules. *See* Kan.Stat.Ann. § 44–506 (stating that Kansas law governs cases where the principal place of employment is in Kansas or where the contract for employment took place in Kansas). However, the choice of laws provision relied upon in both of these cases mirrors the general choice of laws rule for Kansas—Kansas law applies to cases where the contract for employment took place in Kansas. The court in both cases was presented with the same question as is before this court— where was the contract formed? Both courts clearly found that the contract was formed where the employee accepted the job over the telephone, not where the employee showed up for work. The only legal conclusion this court can draw from these holdings is that under Kansas law, the contract for employment is formed when the employee verbally accepts the job. Therefore, the court finds that these cases are relevant to the present inquiry and support the plaintiff's contention that Kansas law should apply to this case.

The defendant also cites a Missouri case which was brought under the Kansas wage payment statute in support of its claim that Kansas law should not apply. In *Bigham v. McCall*, 637 S.W.2d 227 (Mo.Ct. App.1982), the plaintiff brought suit in Missouri to recover deductions from his wages that were improper under Kansas law. The plaintiff was initially employed in Kansas, but then transferred to Missouri. All of the deductions in dispute were taken from the plaintiff's wages while he worked in Missouri. The Missouri court held that the rule *lex loci contractus* was inapplicable under the case and refused to apply Kansas law to the case.

The *Bigham* case, although correctly decided, has no bearing on this case. The *Bigham* case was brought in Missouri, so Missouri choice of laws rules applied to the case. The Missouri court directly referred to the Restatement (Second) of Conflict of Laws in its decision not to apply Kansas law. The Restatement (Second) of Conflict of Laws looks at the contacts each of the states have to the contract dispute and applies a sort of "totality of the circumstances" test to determine which law should apply. The rule of *lex loci contractus* has no application under Missouri choice of laws. This case, however, was brought in Kansas and is governed by Kansas choice of laws. Kansas has not adopted the Restatement (Second) of Conflict of Laws, and still adheres to the theories of the Restatement of Conflict of Laws, including the rule of *lex loci contractus*.

The defendant's next argument that Kansas law should not apply is also based upon a case involving Missouri choice of laws rules, *McCluney v. Jos. Schlitz Brewing Co.*, 649 F.2d 578 (8th Cir.1981). Because Missouri has a totally different set of rules for determining what law should apply in a contract dispute than Kansas, the court finds that *McCluney* has no application to this case.

As a final argument on the issue of what law should apply, the defendant claims that even if the court determines that a Kansas contract exists, this court should decline to apply Kansas law. As support for this argument, the defendant relies on dicta contained in the unpublished opinion of *Aiken v. Employer Health Services, Inc.*, 81 F.3d 172, 1996 WL 134933 (10th

Cir.1996). In *Aiken*, the Tenth Circuit stated:

[W]e recognize that application of the traditional loci delicti approach may, in some instances, result in application of the law of a state that has little connection with the underlying cause of action. In such instances, it is conceivable that the Kansas courts would allow a reviewing court to go beyond the traditional approach and consider other factors, such as those listed in Restatement (Second) of Conflicts of Laws § 145(2) (1971).

*Id.* at *3.

■ As an initial note, the court wants to point out that this language was referring to the Kansas choice of laws rules for torts under the *lex loci delicti* approach, not the choice of law rules for contracts. In addition, the court did not find that Kansas would adopt such a change in its laws, it merely recognized that such an application might be possible. The Kansas courts have consistently applied the Restatement of Conflicts of Laws. There has been no indication that Kansas would convert to the Restatement (Second) of Conflicts of Laws, or some form thereof, in cases such as this. Federal courts sitting in diversity are to apply applicable the choice of law rules of the state in which the federal court sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). This court is not willing to drastically change the state substantive law simply because the application may lead to arbitrary results in this case. Kansas law is clear, on issues of contract construction, the law of the state where the contract was formed governs. It is clear that under Kansas law, the contract was formed in Kansas, and it is, therefore, subject to Kansas law.

## B. APPLICATION OF KANSAS LAW

■ The defendant claims that even if Kansas law applies to this case, EWA does not fall within the statutory definition of "employer" under the KMWMHL. The KMWMHL provides the following definition:

"Employer" means any individual, partnership, association, corporation, business trust or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee, but shall not include any employer who is subject to the provisions of the fair labor standards act of 1938 (29 U.S.C.A. § 201 *et seq.*) and any other acts amendatory thereof or supplemental thereto.

Kan.Stat.Ann. § 44–1202(d) (1993). From the plain language of the statute, it appears that EWA is not covered by the KMWMHL. However, the Kansas Supreme Court has interpreted this statute in a way that makes it applicable to this case.

In *Dollison v. Osborne County*, 241 Kan. 374, 737 P.2d 43 (1987), the Kansas Supreme Court had the opportunity to analyze the KMWMHL and its relationship with the FLSA. The court specifically discussed what effect an exemption to overtime pay requirements under the FLSA would have on an employer who is subject to the KMWMHL. The court stated the following:

Those exemptions to overtime pay such as 29 U.S.C. § 203(e)(2)(C) (the "personal staff" exemption) and 29 U.S.C. § 213(b)(20) (the fewer than five law enforcement officers exemption) which apply only to the FLSA are not relevant to the present case. **Even if the requirements of these exemptions were met by the facts of this case, it would exclude plaintiff only from the protections of the FLSA; it would not exclude him from the KMWMHL.** The effect of plaintiff's falling within either of the above exemptions would mean only that the employment relationship was not "subject to the ... fair labor standards act of 1938." K.S.A. 44–1202(d). The county therefore could still fall within the less generous but still

binding overtime pay requirements of the KMWMHL.

*Id.* at 49 (emphasis added). Although this discussion may be considered dicta in the case because the court went on to find that the FLSA did not apply to the defendant in the case, it clearly shows the Kansas Supreme Court's interpretation of this statute. Under the *Dollison* court's interpretation of the KMWMHL, it is clear that even though the defendant may be exempt from paying overtime under the FLSA, it is still required to pay the overtime under Kansas law. Federal courts hearing cases on diversity jurisdiction do not have the authority to ignore a state supreme court's interpretation of its own statute and rule on a case based on how the federal court interprets the statute.

The Kansas Supreme Court made its interpretation of the KMWMHL as it relates to employers who are exempt from paying overtime under the FLSA very clear in *Dollison.* The court, therefore, finds that the defendant is an "employer" under the KMWMHL and is subject to the overtime payment requirements. Therefore, summary judgment on the ground that the defendant is not subject to the KMWMHL is not appropriate.

### C. STATUTORY PENALTY UNDER COUNT II

 The defendant has moved for summary judgment on Count II of the complaint on two different grounds. Count II seeks a statutory penalty for willful failure to pay the plaintiff's proper wages under Kan.Stat.Ann. § 44–315(b). The first basis for seeking summary judgment is that the plaintiff would not be entitled to any relief under Count II if summary judgment were granted on Count I. Because the court has denied summary judgment on Count I, this basis for summary judgment on Count II is without merit and is denied.

 The defendant also claims that there is no evidence that its failure to pay the plaintiff the overtime wages was will-

ful. In the absence of a willful violation, an employer cannot be required to pay a statutory penalty under Kan.Stat.Ann. § 44–315(b). *Weinzirl v. The Wells Group, Inc.,* 234 Kan. 1016, 677 P.2d 1004, 1010 (1982) (affirming the district court that reversed an administrative award of a penalty where no evidence of willfulness was present). According to Kansas law, " '[a] willful act is one indicating a design, purpose, or intent on the part of a person to do wrong or to cause an injury to another.' " *Id.* (quoting *Holder v. Kansas Steel Built, Inc.,* 224 Kan. 406, 582 P.2d 244, 248 (1978)).

The court finds that a genuine issue of material fact remains as to whether the violation was willful. Whether withholding of wages was willful under Kan.Stat.Ann. § 44–315(b) is a question that should be decided by the trier of fact. *See Holder v. Kansas Steel Built, Inc.,* 224 Kan. 406, 582 P.2d 244, 249 (1978) (holding that the question of willfulness was properly left for the jury to decide). Because the court is unable to find that, as a matter of law, the refusal to pay the plaintiff overtime was not willful, summary judgment must be denied on this issue.

### IV. CONCLUSION

The defendant is not entitled to summary judgment on Count I of the complaint. The court finds that under the Kansas choice of law rules, the dispute over the plaintiff's overtime wages is governed by Kansas law. In addition, the court finds that EWA fits within the statutory definition of "employer" under the KMWMHL as that law is interpreted by the Kansas Supreme Court.

The court also finds that the defendant is not entitled to summary judgment on Count II of the complaint. Because the court finds that the plaintiff may be entitled to overtime wages under the KMWMHL, the plaintiff would be entitled to the statutory penalty authorized by Kan.Stat.Ann. § 44–316(b) if the defen-

dant's refusal to pay the wages was willful. The issue of willfulness is a question of fact that is not properly decided on summary judgment.

**IT IS THEREFORE BY THIS COURT ORDERED** that defendant's Motion for Summary Judgment (Doc. 34) is denied.