Arthur J. GOLDBERG, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,

v.

FABER INDUSTRIES, INC., Defendant-Appellee.

No. 13238.

United States Court of Appeals Seventh Circuit.

June 8, 1961.

Charles Donahue, Solicitor, Robert E. Nagle, Attorney, U. S. Department of Labor, Washington, D. C., Herman Grant, U. S. Department of Labor, Chicago, Ill., Harold C. Nystrom, Bessie Margolin, U. S. Department of Labor, Washington, D. C., for appellant.

E. V. Champion, Peoria, Ill., Willard B. Gaskins, Peoria, Ill., for appellee.

Robert W. Ginnane, General Counsel, Interstate Commerce Commission, Washington, D. C., for amicus curiae.

Before DUFFY and KNOCH, Circuit Judges, and GRUBB, District Judge.

DUFFY, Circuit Judge.

This suit was brought by the Secretary of Labor under section 17 of the Fair Labor Standards Act of 1938 (as amended 29 U.S.C.A. § 201 et seq.) to restrain defendant from violating the Act's overtime provisions with respect to certain truck drivers in its employ (29 U.S.C.A. § 207).

The case was submitted upon a stipulation of facts. The District Court held the Interstate Commerce Commission has the power, under section 204 (a) (3) of the Motor Carrier Act, 1935, 49 U.S.C.A. § 304(a) (3), to fix qualifications and maximum hours of employment for all of defendant's scrap drivers, and that the overtime provisions of the Fair Labor Standards Act do not apply to any such employees.

Defendant is engaged in the business of purchasing, collecting and rendering meat scraps and dead animals for the production of grease, animal foods and

other products. With its central office in Peoria, Illinois, defendant operates ten plants of various types including four rendering plants located in Illinois.

In order to obtain the necessary supply of meat scraps, defendant employs at each of the rendering plants, one or more "scrap drivers" who drive their trucks over specially assigned and designated routes, and purchase scraps from butchers, restaurants, packing plants and others. Twenty drivers are so employed.

Each driver delivers the scrap collected to the rendering plant which he serves. In some instances, where the rendering plant is at a distance from the route, deliveries are made to mobile trailers (called loading platforms) which are sent out from a rendering plant to a more convenient location.

When a scrap driver is absent due to illness or other cause, his route may be handled by a supervisor or other personnel. Occasionally, another scrap driver may handle the route. The stipulated facts do not show any instance where a scrap driver who is regularly assigned to an intrastate route, ever handled an interstate route.

There is no dispute that these drivers are engaged in the production of goods for commerce; nor is there any dispute that the drivers are all employed for workweeks in excess of forty hours without receiving extra wages for such overtime work. Defendant claims, however, that it is exempt from such overtime provisions by reason of section 13(b) (1) of the Act (29 U.S.C.A. § 213(b) (1), which so exempts employees with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to section 204 of the Motor Carrier Act, 1935.

Five of the scrap drivers are assigned to routes lying partly outside of Illinois. All concerned agree that these five drivers are subject to the jurisdiction of the Interstate Commerce Commission and are, therefore, within the exemption of the Fair Labor Standards Act. Thus, the sole question is whether the other fifteen drivers who have routes solely within Illinois, are also exempt.

The question of the Commission's power to prescribe qualifications and maximum hours of service for the fifteen scrap drivers employed by defendant, turns upon the issue whether they are engaged in transporting property in interstate commerce. This can be done in one of two ways, 1) by the motor vehicle being driven across state lines; or 2) where the motor vehicle is operated wholly upon the highways of a single state, but the transportation performed is part of a through movement originating in or destined to a point in another state.

As none of the fifteen drivers crossed state lines on their respective routes, in order to be in interstate commerce, the transportation must be part of a through movement, originating in or destined to a point in another state. The meat scraps are delivered to rendering plants where they are processed into grease and livestock and poultry foods. This processing is sufficient to break the continuity of the transportation, thus precluding a holding that there is a through interstate movement of the meat scraps. Arkadelphia Milling Company v. St. Louis S. W. Ry., 249 U.S. 134, 151, 39 S.Ct. 237, 63 L.Ed. 517; Waldie, 48 M.C.C. 798. We conclude that the fifteen scrap drivers were not engaged in operating motor vehicles in interstate commerce as that term is used in the Interstate Commerce Act.

The District Court concluded that as five of the twenty scrap drivers were admittedly engaged in interstate commerce, the other fifteen were in the same category. The Court reasoned that "a carrier such as defendant is either fish or fowl under the Motor Carrier Act, not half fish and half fowl. If the Commission has power to control any part of a carrier's operations, it has power to extend its control, through the carrier, over all employees who work within the controlled classification."

The District Court was in error in holding the employer's operations were controlling. The test is the nature of the transportation performed by the employees. The exemption in the Fair Labor Standards Act depends upon the activities of the individual employees. The Commission has defined its powers as, " * * * Because of the precise wording of section 204(a) (3) we have no doubt that our power under that section is limited to prescribing qualifications and maximum hours of service for those employees only whose activities affect the safety of operation of motor vehicles engaged in transporting property in interstate and foreign commerce." Ex Parte No. MC–28, Jurisdiction over Employees of Common, Contract, and Private Motor Carriers under section 204 (a) of Motor Carrier Act, 1935, 13 M.C. C. 481, 482.

The District Court relied, in part, upon Morris v. McComb, 332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44, although admitting the case was not precisely in point on the issue here presented.

Morris involved a common carrier engaged in a general cartage business, operating from a central garage where the employees formed a single pool of drivers. Any one of these drivers was likely to be called upon to handle an interstate trip. The issue before the Court in Morris was whether an employee must spend a substantial part of his transportation in interstate commerce in order to be in the class subject to interstate commerce regulation.

Defendant places much emphasis on the fact that two of the drivers in Morris had not actually made any trips in interstate commerce. However, a careful reading of the Morris opinion shows that these two drivers were subject, at any time, to be assigned to interstate trips, and that at some time during the year they would, in all likelihood, share in the carrier's interstate commerce trips.

In defendant's brief, an effort was made to show that the instant case was a jurisdictional dispute between two federal agencies with the defendant a pawn in between. This Court *sua sponte* invited the Interstate Commerce Commission to file a brief *amicus curiae*. This was done. From the brief thus filed, we learn that the Interstate Commerce Commission agrees completely with the contentions of the Secretary of Labor herein, and asserts that it has no power or jurisdiction over the fifteen scrap drivers.

The judgment of the District Court is

Reversed.