(158 P.3d 987)
9No. 96,290

SUSAN A. UNDERHILL, *Appellant,* v. JOHN G. THOMPSON, *Appellee.*

Opinion filed May 25, 2007.

*Ryan E. Hodge*, of Ray Hodge & Associates, L.L.C., of Wichita, for appellant.

*William P. Tretbar*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, for appellee.

Before MCANANY, P.J., GREEN and CAPLINGER, JJ.

GREEN, J.: Susan A. Underhill appeals from a judgment of the trial court dismissing her negligence action against John G. Thompson because the action was time barred. Because Underhill did not serve Thompson until after the statute of limitations had run, the trial court properly dismissed her claim. Accordingly, we affirm.

The case arose out of a simple car accident. Thompson rear-ended Underhill on August 20, 2002. According to Thompson, Underhill did not appear injured and left the scene on her own. Thompson gave both Underhill and the officer his correct address: 2520 South Minnesota Street in Wichita.

On July 21, 2004, Underhill filed a negligence action against Thompson. Underhill delayed filing her action because she was undergoing treatment for her injuries and did not know the full extent of her damages.

Two months later, Underhill hired Branda Detective Agency to serve Thompson. Donald Branda, the owner of the agency, discovered Thompson no longer lived on Minnesota Street. He further contacted the utility company, water company, and possible relatives from Augusta, Kansas, but could not find a current address for Thompson. He then searched a State of Kansas employment database and found no listing. Nevertheless, Branda testified that nothing suggested that Thompson was hiding.

Underhill faxed Thompson's known information to the process server to do a skip trace. That trace was unsuccessful. At that point, there is a dispute over the facts. Underhill checked Thompson's forwarding address with the post office. Moreover, Underhill contends that the forwarding address led to a vacant lot. On the other hand, Thompson points out that Branda's testimony and affidavit failed to mention a search of a forwarding address. Thompson suggests that Underhill was referring to his original address, which was listed on his driver's license. That address was located on East 18th Street in Wichita in a building that had later been demolished.

Underhill's attorneys performed computer searches for Thompson's address and hired America Find, Inc. Both attempts were unsuccessful. On October 18, 2004, the trial court granted Under-

hill 30 additional days to serve process, which gave Underhill until November 18, 2004, to obtain service on Thompson.

On November 9, 2004, Underhill hired Sheldon Wulf Process Service. This company also could not find any new information about Thompson. On November 16, Underhill unsuccessfully attempted residential service on Thompson by tacking the summons and petition to the door at Thompson's Minnesota Street address.

Next, Underhill hired Bickell Lund, an investigator who specializes in locating people, on November 17, 2004, 1 day before the service deadline. Lund first contacted Thompson's former employer, Cibola. A Cibola employee told Lund that Thompson might be a fireman. Lund began contacting fire stations in Wichita and soon contacted a station where a fireman told her that Thompson worked there and would be back on November 19. This fireman gave Lund Thompson's current cell phone number. Lund traced the phone number to an address in Goddard, Kansas. Lund testified that although she had found Thompson in 29 hours, some of Thompson's actions were similar to a person who was attempting to hide.

Branda sent his associate, Charles Phelps, to the Goddard address. Phelps discovered that no one lived in the house and saw a "For Sale" sign in the yard. The next morning, Phelps arrived at Station 19 and served Thompson, 121 days after the petition had been filed.

In his deposition, Thompson explained that at the time of the accident he lived on Minnesota Street, but had not changed his driver's license address from his original address on 18th Street. He continued to live on Minnesota Street until February 2004, 17 months after the accident. Afterwards, he moved twice more in Kansas. He testified that he began working as a firefighter in the summer of 2003.

Thompson further testified that he had not known of the pending lawsuit, and he had not expected to be sued over the accident. He also testified that he had no trouble with creditors or the law. He stated that he left a forwarding address with each move except for his last move in Kansas. He stated that he never had a problem receiving his mail. After moving from his home on Minnesota

Street, Thompson testified that he no longer had any land phone lines because he used a cell phone as his primary phone. The cell phone, which he had from the time of the wreck until he was served, was owned and listed under the name of his sister. Thompson stated that his sister gave him the phone because she had an extra line on her family plan. As for utilities, he indicated that he only had them in his name when he lived on 18th Street because he usually lived with roommates.

In March 2005, Underhill mailed requests for admissions to Thompson. One of the requests stated that " 'this lawsuit has been instituted within the statute of limitations.' " At this point, Thompson's lawyer had difficulty reaching Thompson because Thompson had moved to Kentucky without giving his attorney his new address. As a result, Thompson's response to admissions was untimely. Thompson eventually responded that the suit was not commenced within 2 years and should be time barred.

Thompson moved to dismiss Underhill's suit, or in the alternative, for summary judgment. The trial court agreed and dismissed the case finding that Underhill's claim was time barred. Underhill moved for reconsideration. The trial court granted the motion in part to allow Underhill to investigate Thompson's credit report. After the investigation, the trial court heard arguments and denied the motion for reconsideration.

*Standard of Review*

Under K.S.A. 60-212(b)(6), if matters outside the pleading are presented and not excluded by the court, a motion to dismiss will be treated as one for summary judgment. *Davidson v. Denning,* 259 Kan. 659, 666-67, 914 P.2d 936 (1996).

" ' "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case.

On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied." [Citation omitted.]' [Citations omitted.]" *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, 788, 107 P.3d 1219 (2005).

In addition, this court's review of the interpretation of the statute of limitations is a question of law for which the court's review is unlimited. *Morris v. Morris*, 27 Kan. App. 2d 1014, 1016, 10 P.3d 771, *rev. denied* 270 Kan. 899 (2000).

*I. Statute of Limitations*

Under K.S.A. 60-513(a)(4), a negligence action must be brought within 2 years. See *Bayless. v. Dieckhaus*, 33 Kan. App. 2d 620, 623, 106 P.3d 83, *rev. denied* 280 Kan. 981 (2005). The commencement of an action is important in determining whether an action has been brought within the period of time allowed by the applicable statute of limitations. In this jurisdiction, one way to commence an action is by filing a petition and having the petition served on the defendant:

"(1) Filing a petition with the clerk of the court, if service of process is obtained or the first publication is made for service by publication within 90 days after the petition is filed, except that the court may extend that time an additional 30 days upon a showing of good cause by the plaintiff; or (2) service of process or first publication, if service of process or first publication is not made within the time specified by provision (1)." K.S.A. 60-203(a).

Here, Underhill filed suit on July 21, 2004, for the August 20, 2002, accident. She did not serve Thompson until November 19, 2004, 121 days after filing her action. Therefore, the action commenced on November 19, 2004, was commenced more than 2 years after the accident.

When an action is time barred on its face, it must be dismissed unless the statute of limitations was tolled. The plaintiff has the burden of proving facts sufficient to toll the limitations. See *Slayden v. Sixta*, 250 Kan. 23, 26, 825 P.2d 119 (1992). Underhill argues that the statute of limitations was tolled under K.S.A. 60-517. K.S.A. 60-517 states:

"If when a cause of action accrues against a person he or she be out of the state, or has absconded or concealed himself or herself, the period limited for the commencement of the action shall not begin to run until such person comes into

the state, or while he or she is so absconded or concealed, and if after the cause of action accrues he or she depart from the state, or abscond or conceal himself or herself, the time of the absence or concealment shall not be computed as any part of the period within which the action must be brought. This section shall not apply to extend the period of limitation as to any defendant whose whereabouts are known and upon whom service of summons can be effected under the provisions of article 3 of this chapter." K.S.A. 60-517.

## *Did the trial court misapply the two-pronged test under K.S.A. 60-517?*

Underhill first argues that the trial court misapplied the two-pronged test to determine whether the statute of limitations should be tolled. The *Morris* court set out the test: " '(1) Whether the plaintiff, in the exercise of due diligence, knew or should have known of defendant's whereabouts, and (2) whether defendant concealed himself.' " *Morris*, 27 Kan. App. 2d at 1017-18.

### *A. Did Underhill exercise due diligence to find Thompson?*

The trial court found that Underhill made a "concerted effort" to locate Thompson. Underhill contends, and Thompson does not argue, that she exercised due diligence in searching for Thompson. Due diligence requires such a measure of prudence a reasonable person would make in light of the circumstances. *Bayless*, 33 Kan. App. 2d at 627. In looking at the facts in a light most favorable to Underhill, Underhill's hiring of several investigators to locate Thompson's whereabouts satisfied the due diligence prong.

### *B. Did Thompson conceal himself?*

Underhill argues that the statute of limitations was tolled under K.S.A. 60-517 because Thompson concealed his whereabouts. The burden of proof on the issue of concealment rests with the plaintiff. *Johnson v. Miller*, 8 Kan. App. 2d 288, 290, 655 P.2d 475 (1982). "The mere inability of a plaintiff to locate a defendant where there has been no attempt by defendant to conceal himself is not sufficient to establish concealment within the meaning of the tolling statute." 8 Kan. App. 2d at 290. In explaining what the word "conceal" means, our Supreme Court in *Frey v. Aultman, Miller & Co.*, 30 Kan. 181, 184, 2 Pac. 168 (1883), stated:

"Suppose a merchant in the east absconds from his residence and comes to the city of Topeka, there engages in the same line of business under his own name, lives as open and public a life as other citizens of Topeka: can it be said that the manner of his departure from the east, and the failure of his creditors after reasonable efforts to discover his residence in Topeka, prove that he conceals himself, within the meaning of that section? We think not. *We think the word 'conceal' contemplates some action here; that he passes under an assumed name, has changed his occupation, or acts in a manner which tends to prevent the community in which he lives from knowing who he is or whence he came."* 30 Kan. at 183.

One of Underhill's theories of concealment is that Thompson failed to update his driver's license address, in violation of K.SA. 8-248. Nevertheless, "[a] violation of 8-248, requiring a driver to update his or her address, in itself, does not prove concealment and toll the running of the statute of limitations." *Morris,* 27 Kan. App. 2d at 1019.

Next, Underhill maintains that Thompson's erroneous forwarding address was an affirmative act of concealment. Although this fact is contested, this court must consider it in a light most favorable to Underhill. Thompson's erroneous forwarding address is the strongest fact showing that Thompson had attempted to conceal his whereabouts. Nevertheless, to infer from an erroneous forwarding address that Thompson was actively concealing his whereabouts seems a leap when no other possible affirmative steps of concealment exist. See *Hogue v. Johnson,* 28 Kan. App. 2d 334, 338, 17 P.3d 364 (1999) ("[I]f a plaintiff can come before the court prior to the expiration of the statute of limitations, present a self-serving set of facts with only an assumption of a defendant's affirmative concealment or absconding, and receive an order tolling the statute of limitations, then the statute of limitations is rendered meaningless.").

Finally, Underhill argues that the facts that Thompson had no utilities in his name, had no land line phone, had no cell phone in his name, and that he had moved to Kentucky after being served without giving his attorney his updated address, as evidence of concealment. Underhill also notes that Thompson's name did not appear in a Kansas employee database. Nevertheless, none of those points argued by Underhill, show an affirmative act by Thompson to conceal himself.

Moreover, "[s]ince the defendant must take some affirmative act to conceal himself or herself from service of process, a defendant's version of the facts is often essential for the court to make such a determination." 28 Kan. App. 2d at 338. Here, Thompson furnished the correct contact information at the scene of the accident. He lived at the same address for 17 months after the accident. He worked openly and under his own name in Wichita as a city fireman. He has had no trouble with the law, and no evidence showed that he had avoided creditors. He did not live or work under an assumed name. He did not work under a false social security number. In sum, Thompson did not live as a man trying to conceal his identity.

As a result, we are not persuaded that the actions previously mentioned by Underhill constitute concealment by Thompson under K.S.A. 60-517.

## II. *Was Summary Judgment Proper?*

Underhill next argues that summary judgment was improper in a case involving K.S.A. 60-517 because it requires an inquiry into a person's state of mind. When intent is proven by circumstantial evidence, summary judgment is rarely appropriate because different people could reach different conclusions. See *Kastner v. Blue Cross & Blue Shield of Kansas, Inc.*, 21 Kan. App. 2d 16, 24, 894 P.2d 909, *rev. denied* 257 Kan. 1092 (1995). Underhill maintains that the evidence shows that the jury could have found that Thompson intended to elude service by concealing himself. Nevertheless, because we have previously determined that Thompson's actions did not constitute concealment, Thompson's state of mind is irrelevant.

Moreover, even if we assumed that Thompson's actions constituted concealment, summary judgment would still have been appropriate because this issue was not raised below. "A party may not invite error and then complain of that error on appeal. [Citation omitted.]" *Butler County R.W.D. No. 8 v. Yates*, 275 Kan. 291, 296, 64 P.3d 357 (2003). Here, the trial court scheduled an evidentiary hearing to resolve the case, and the parties asked the court to determine Thompson's motion to dismiss on the basis of dep-

osition testimony. Even if Underhill had a right to a jury trial, she waived this right by asking the court to decide the issue based on deposition testimony. After the trial court's original decision, Underhill never raised this issue in her motion for reconsideration. Underhill cannot accept or encourage the trial court to decide the issue on the basis of deposition testimony and then turn around on appeal and maintain that the court erred when it decided that issue on the basis of deposition testimony. To further consider this issue would be improper because Underhill actively contributed to what she now maintains was trial court error.

III. *Was the Trial Court's Order Inequitable and Against Public Policy?*

Next, Underhill argues that the trial court's decision did not secure a " 'just' " result. Underhill relies on the fact that courts must liberally construe the civil procedure statutes. See K.S.A. 60-102. Underhill states that the trial court admitted the ruling was "harsh." She then compares this decision to the trial court's ruling regarding Thompson's untimely response to her request for admissions. Underhill argues that because the reply was untimely, K.S.A. 60-236(a) requires the admissions to be deemed admitted. She further argues that Thompson would have admitted that the suit did not violate the statute of limitations. Nevertheless, the trial court granted Thompson's motion for relief from operation of K.S.A. 60-236(a). Underhill argues that if the court "is to follow the strict letter of the law [for the statute of limitations] then the Court should have applied the same standard to the defendant on his failure to timely respond to request for admissions."

This argument is at variance with the trial court's authority. A trial court has wide discretion to extend the time to respond to requests for admissions. See *Yunghans v. O'Toole*, 224 Kan. 553, 554-55, 581 P.2d 393 (1978). On the other hand, no such discretion exists for the statute of limitations unless it can be tolled by statute. Because no valid reason to toll the running of the statute of limitations was furnished by Underhill, the trial court was required to apply the 2-year statute of limitations.

Underhill next argues that the trial court's ruling goes against public policy. She maintains that the trial court punished her for waiting to discover the extent of her injuries in order to prepare a more reasonable demand letter. Underhill asserts that the trial court's ruling will cause attorneys to immediately file suit as soon as they are presented with a claim, even if they must speculate about damages. She contends that this will discourage settlements. We disagree.

Underhill's problem did not occur from waiting too long to file suit. Instead, Underhill's problem stems from what constitutes the commencement of an action. As stated earlier, an action is commenced when the petition is filed and service is made or when service is made. See K.S.A. 60-203(a). On the other hand, in another jurisdiction, an action may be commenced when the petition is filed or when the petition is filed and put in the sheriff's hands for service. Nevertheless, if Underhill had waited another day (until July 22, 2004) to file her petition and had obtained service on Thompson on the same date (November 19, 2004), her action would have been timely.

Because our state legislature has enacted a statutory scheme to determine what constitutes the commencement of an action, Underhill's argument fails.

IV. *Did the Trial Court Err by Not Applying the Unique Circumstances Doctrine to Toll the Statute?*

Finally, Underhill argues that the trial court should have applied the unique circumstances doctrine. "The unique circumstances doctrine is one of specific and limited application and is subject to de novo review by the appellate courts." *In re Tax Appeal of Sumner County*, 261 Kan. 307, 316, 930 P.2d 1385 (1997). As our Supreme Court has observed, the unique circumstances doctrine is designed to prevent an unfairness:

"In the interest of justice, an appeal which is otherwise untimely may be maintained in unique circumstances if (1) the appellant reasonably and in good faith relies upon judicial action seemingly extending the appeal period; (2) the court order purporting to extend the appeal time was for no more than 30 days and was made and entered prior to the expiration of the official appeal period; and (3) the

appellant files a notice of appeal within the period apparently judicially extended." *Schroeder v. Urban*, 242 Kan. 710, Syl., 750 P.2d 405 (1988).

Our Supreme Court has only applied this doctrine "where an untimely filing was the result of a nonparty error." *Nguyen v. IBP, Inc.*, 266 Kan. 580, 587, 972 P.2d 747 (1999). Underhill argues that the doctrine should apply here because she diligently sought Thompson, she obtained service on Thompson only 8 hours late, and her redress for her injuries will be denied. Nevertheless, no evidence has been furnished that a third party error contributed to Underhill's inability to locate Thompson's whereabouts.

Although 8 hours does seem like a small window in which to miss a statutory deadline, the interest of justice does not support making exceptions for being really close. In an action for damages to real and to personal property, our Supreme Court explained the significant hurdle that a plaintiff must clear to avoid the bar of the statute of limitations:

"[P]laintiffs insist that the ends of justice would be served by granting them their day in court, despite the fact their action was commenced out of time. The same suggestion, we presume, could be advanced by every litigant who by inattention, inadvertence or otherwise, had let the time slip by for bringing his lawsuit.

"It has been said that statutes of limitation are statutes of repose, precluding presentation of stale claims and encouraging diligence on the part of those whose rights have been infringed. In furthering these objectives, such statutes serve a worthy and useful purpose, and we are not at liberty to ignore them completely." *Welch v. City of Kansas City*, 204 Kan. 765, 771, 465 P.2d 951 (1970).

Therefore, we are not persuaded that the doctrine of unique circumstances applies to this situation.

Affirmed.