(224 P.3d 593)
No. 101,915

CHRISTOPHER BROWN, On Behalf of Himself and All Other Persons Similarly Situated, *Appellants*, v. FORD STORAGE AND MOVING COMPANY, INC., *et al.*, *Appellees*.

Opinion filed February 12, 2010.

*Gregory M. Dennis*, of Kent T. Perry & Co., L.C., of Overland Park, *Barry R. Grissom*, of Grissom Law Offices, of Overland Park, and *Michael F. Brady*, *Michael Hodgson*, and *Matt Osman*, of Brady & Associates Law Offices, of Overland Park, for appellants.

*Marcia A. Wood*, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Wichita, and *Thomas A. Hamill* and *B. Scott Tschudy*, of the same firm, of Overland Park, for appellee Ford Storage and Moving Company.

*Anthony J. Romano*, *Robert J. Hingula*, and *Andrea C. Bernica*, of Polsinelli Shughart PC, of Kansas City, Missouri, for appellee Nebraska Furniture Mart, Inc.

*James T. Graves*, of Scopelitis, Garvin, Light, Hanson & Feary, P.C., of Kansas City, *Robert Digges, Jr.*, of Arlington, Virginia, and *Gregory M. Feary*, of Scopelitis, Garvin, Light, Hanson & Feary, P.C., of Indianapolis, Indiana, were on the brief for *amici curiae* Kansas Motor Carrier Association and American Trucking Associations, Inc.

Before MCANANY, P.J., ELLIOTT and LEBEN, JJ.

MCANANY, J.: Christopher Brown brought this action on behalf of himself and other similarly situated delivery truck drivers alleg-

ing the failure of the defendants Ford Storage and Moving Co. (Ford), and Nebraska Furniture Mart, Inc. (Nebraska), to pay overtime wages for hours worked in excess of 46 hours per work week in violation of the Kansas Minimum Wage and Maximum Hours Law (KMWMHL), K.S.A. 44-1201 *et seq.* Brown contends that Ford employed him and other drivers to deliver goods for Nebraska. He contends that Nebraska controlled the delivery services of Ford and its drivers to the extent that Ford and Nebraska became joint employers within the meaning of Kansas law.

Nebraska moved to dismiss, contending that the KMWMHL does not apply. The matter was extensively briefed. Nebraska asserted that it is not subject to the KMWMHL because it is already subject to regulation under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* (2006), based upon its interstate commerce activities and its annual gross sales in excess of $500,000.

While denying the legal conclusion that Nebraska is subject to the FLSA, Brown did not dispute that Nebraska was engaged in interstate commerce with the requisite sales volume. Following oral argument, the district court sustained the motion and dismissed the claims against Nebraska. The court found that Nebraska was not an "employer" under the terms of the KMWMHL, but rather was subject to the Fair Labor Standards Act, and therefore was specifically excluded from the KMWMHL by K.S.A. 44-1202(d).

A week later, Ford moved for judgment on the pleadings or, in the alternative, for summary judgment, asserting the same arguments successfully asserted by Nebraska. Following receipt of Brown's brief in opposition, the district court sustained Ford's motion and this appeal followed.

At issue in this appeal is the scope and interaction of KMWMHL and the FLSA.

### STANDARD OF REVIEW

First, we must briefly address our standard of review. While the district court dismissed Nebraska pursuant to K.S.A. 60-212(b)(6) for failure to state a claim upon which relief may be granted, the court considered facts beyond the face of the pleading (Nebraska's

interstate commerce activities and its sales volume), thereby converting the motion to one for summary judgment. See *Underhill v. Thompson*, 37 Kan. App. 2d 870, 874, 158 P.3d 987 (2007). Ford's motion was for summary judgment. Accordingly, and also because the scope and effect of the FLSA and the KMWMHL are questions of law, our review of Nebraska and Ford's motions is de novo. See *Double M Constr. v. Kansas Corporation Comm'n*, 288 Kan. 268, 271, 202 P.3d 7 (2009); *Troutman v. Curtis*, 286 Kan. 452, Syl. ¶ 1, 185 P.3d 930 (2008). In our de novo review, we apply the familiar summary judgment standards restated in *Underhill*, 37 Kan. App. 2d at 874-75.

## The Statutes

### Kansas

K.S.A. 44-1204(a), which is part of the KMWMHL, sets forth the basic overtime pay requirement of Kansas law. It requires an employer to pay its employee at least 1.5 times the employee's regular hourly wage for hours worked in excess of 46 hours in a workweek. However, the statute also provides that this overtime pay requirement does not apply to employees who are "covered under the provisions of section 7 of the [FLSA]." K.S.A. 44-1204(c)(1). Similarly, K.S.A. 44-1202(d) provides that the term "employer" "shall not include any employer who is subject to the provisions of the [FLSA]."

### Federal

The FLSA, 29 U.S.C. § 207(a)(1) (2006), requires overtime pay for work in excess of 40 hours in the workweek, rather than work in excess of 46 hours under Kansas law. It provides:

"[N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 26 U.S.C. § 207(a)(1).

To be "an enterprise engaged in commerce or in the production of goods for commerce" under 29 U.S.C. § 207(a)(1), the enter-

prise must have "employees engaged in commerce or in the production of goods for commerce, or [have] employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," and have an annual gross sales volume of at least $500,000. 29 U.S.C. § 203(s)(1) (2006).

Finally, 29 U.S.C. § 213(b) (2006) of the FLSA excludes certain categories of employees from maximum hours and minimum pay regulation:

"The [overtime] provisions of section 207 of this title shall not apply with respect to—

"(1) any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of title 49 [including, among other things, interstate motor carriers]." 29 U.S.C. § 213(b).

In our de novo consideration of the motions of Ford and Nebraska, we must answer three questions:

(1) Are Ford and Nebraska subject to regulation under the FLSA?

(2) If so, does this exempt them from regulation under the KMWMHL?

(3) If the FLSA takes Ford and Nebraska out of state wage and hour control, is Brown still entitled to KMWMHL overtime?

1. *Are Ford and Nebraska subject to regulation under the FLSA?*

*Goldberg v. Faber Industries, Inc.*, 291 F.2d 232 (7th Cir. 1961), typifies the cases under the FLSA before Congress enacted changes in 1961. In *Goldberg*, the Secretary of Labor sued Faber for failure to pay overtime wages to certain truck drivers. The district court held that the nature of the employer's operation determined whether the Act applied. The Circuit Court of Appeals reversed. In declaring that the nature of Faber's operations was not controlling, the court stated:

"The test is the nature of the transportation performed by the employees. The exemption in the Fair Labor Standards Act depends upon the activities of the individual employees." 291 F.2d at 235.

Brown relies on a series of cases from 1943 to 1961 to support the proposition that we should view coverage under the KMWMHL from the employee's perspective, not the employer's perspective. We do not find them persuasive.

Before 1961, the FLSA extended benefits only to workers who were themselves engaged in interstate commerce. This is referred to as "individual employee coverage." In 1961, Congress amended the FLSA to add the concept of enterprise coverage. As explained in *Schultz v. Poirier*, 300 F. Supp. 1156, 1158 (E.D. La. 1969):

"The concept of enterprise coverage was added by amendments in 1961 and expanded by amendments in 1966. Under the concept of enterprise coverage, a business that qualifies as a covered enterprise within the meaning of the statute is subject to the Act's requirements with respect to all its employees, including workers engaged in purely local activities. Under the concept of individual employee coverage, . . . the Act . . . covered employees individually when their particular activities had something to do with interstate commerce. Amendments to the Act in 1961 and 1966 extended coverage to all employees working for a covered enterprise, whether or not the particular employee's activities had anything to do with interstate commerce."

An employer is subject to the provisions of the FLSA if the employer satisfies two criteria: the employer (1) is engaged in interstate commerce and (2) has an annual gross sales volume of at least $500,000. 29 U.S.C. § 203(s)(1). Ford and Nebraska satisfy these criteria and are subject to the FLSA. Ford and Nebraska are covered enterprises.

2. *Does this exempt Ford and Nebraska from regulation under the KMWMHL?*

K.S.A. 44-1202(d) provides in clear and unambiguous language that the term "employer" "shall not include any employer who is subject to the provisions of the [FLSA]."

Brown argues that we should ignore this clear expression of legislative intent because of the Kansas Supreme Court's holding in *Dollison v. Osborne County*, 241 Kan. 374, 737 P.2d 43 (1987). He also cites the holding in *Clements v. Emery Worldwide Airlines, Inc.*, 44 F. Supp. 2d 1141 (D. Kan. 1999), for its analysis of and reliance on *Dollison*.

In *Clements*, plaintiff sought overtime wages under the KMWMHL from his employer, which was engaged in interstate commerce and had the requisite sales volume to subject the employer to regulation under the FLSA. The employer claimed it was subject to the FLSA and that plaintiff was excluded from coverage under the KMWMHL. After noting the plain language of the KMWMHL, K.S.A. 44-1202(d), that "employer" does "not include any employer who is subject to the provisions of the [FLSA]," the district court examined *Dollison* and concluded: "Under the *Dollison* court's interpretation of the KMWMHL, it is clear that even though the defendant may be exempt from paying overtime under the FLSA, it is still required to pay the overtime under Kansas law." *Clements*, 44 F. Supp. 2d at 1147.

We read *Dollison* differently than do Brown and the district court in *Clements*. It is important to read *Dollison* closely and understand what was really at issue in the case.

In *Dollison*, the employer was Osborne County, a unit of local government. The wage claims at issue there arose during a time when the FLSA had been interpreted by the United States Supreme Court *not* to apply to state and local governments. While a later United States Supreme Court decision reversed that interpretation—making the FLSA applicable to state and local government—the *Dollison* opinion recognized that the later Supreme Court decision was not retroactive and, thus, the FLSA did not apply to the claims against Osborne County. Instead, all of the pay claims at issue in *Dollison* arose before the FLSA was applied to local governments. 241 Kan. at 384-85.

*Dollison* dealt with a defense to an overtime claim that is the exact opposite of the defense being asserted here. Dollison's employer, Osborne County, did not contend that it was exempt from the requirements of the KMWMHL because it was already subject to the FLSA. It could not make that argument because the FLSA had no application to local governments at that time. Instead, Osborne County apparently contended that it was exempt from coverage under the KMWMHL because it was *exempt* under the FLSA. At least, that is how the district court treated the employer's defense. The district court relied on an exemption from the FLSA

to determine that Osborne County had no obligation to pay further wages to Dollison. On appeal, our Supreme Court held that an FLSA exemption could not shield Osborne County from possible liability under the KMWMHL. 241 Kan. at 385.

Here, however, Ford and Nebraska assert the opposite. They contend they are exempt from coverage under the KMWMHL because they *are subject to* the FLSA.

Returning to the facts in *Dollison*, the Osborne County under-sheriff sued the county for overtime pay under the KMWMHL. The district court denied relief, finding that the county's sheriff's department met the FLSA exemption that applied to law enforcement organizations with fewer than five employees. 29 U.S.C. § 213(b)(20) (2006). In doing so, the district court failed to address the issue of coverage under the KMWMHL, the statutory basis for Dollison's claim. The Supreme Court reversed and remanded.

The fewer than five employees exception in law enforcement activities found in 29 U.S.C. § 213(b)(20) (2006) of the FLSA is not also found in the KMWMHL. The district court denied Dollison's claim based on his employer being exempt under the FLSA. But Dollison's claim was based upon a violation of the KMWMHL, not the FLSA. The district court apparently considered the FLSA and the KMWMHL as coextensive; that is, exclusion from one means exclusion from both.

Our Supreme Court noted that, pursuant to K.S.A. 44-1202(d), "Kansas law does not apply to 'employers' who are obliged to meet the standards of the FLSA." 241 Kan. at 381. The statute specifically excludes "any employer who is subject to the provisions of the [FLSA]." 241 Kan. at 381. But the district court denied overtime payment not because Dollison was excluded under the KMWMHL, but because he was excluded under the FLSA. This was despite the fact that the KMWMHL has a specific overtime pay provision applicable to an employee engaged in law enforcement. K.S.A. 44-1204(b). The Supreme Court stated:

"It may be that an employee is required to work longer before he qualifies for overtime pay under the KMWMHL than under the FLSA, but this does not detract from the plain wording of the Kansas law. If an employment relationship

is excluded from the FLSA under the exemption that is unique to the federal law, the employee would still be subject to the KMWMHL." 241 Kan. at 383.

Thus, the Supreme Court rejected the notion that the FLSA and the KMWMHL are coextensive. In other words, being exempt from coverage under the FLSA does not automatically mean the employer is exempt under the KMWMHL. Such a notion would "effectively nullify the state law." 241 Kan. at 383. Because the district court resolved the matter based on an exemption in the FLSA without considering whether there was an applicable exemption under the KMWMHL, the Supreme Court remanded the case for further consideration of Dollison's claim under Kansas law.

*Dollison's* reference to exemptions and being exempt is somewhat confusing—and perhaps misleading—when divorced from the factual context of that case. The employer in *Dollison* simply was not subject to the FLSA at all. However, a different employer may be subject to the FLSA yet exempt from some aspects of the employer-employee wage relationship, such as the payment of overtime. In such a different context, the language of *Dollison* cannot be applied literally.

The *Dollison* court relied on "the plain wording of the Kansas law." 241 Kan. at 383. So do we. *Dollison* does not control the outcome in Brown's case. The plain wording of K.S.A. 44-1202(d) does.

The KMWMHL regulates not only the payment of overtime, but sets the minimum hourly wage employees must be paid. K.S.A. 44-1203. So does the FLSA. 29 U.S.C. § 206(a). But the KMWMHL applies only to "employers" as defined by the statute. The KMWMHL definition of "employer" excludes entities subject to regulation under the FLSA. K.S.A. 44-1202(d).

Ford and Nebraska are subject to the FLSA because each does more than $500,000 of annual interstate business. As employers satisfying the jurisdictional requirements of the FLSA, Ford and Nebraska are obligated to pay their employees at least the federal minimum wage mandated by the FLSA, see 29 U.S.C. § 206(a), not the traditionally lesser minimum wage mandated under the KMWMHL. Failure to do so would subject them to liability under

the FLSA, not the KMWMHL. For this reason alone, they are subject to FLSA regulation and therefore excluded from the KMWMHL by K.S.A. 44-1202(d). However, the FLSA also prohibits Ford and Nebraska from using gender as a basis for setting pay. See 29 U.S.C. § 206(d). It prohibits Ford and Nebraska from hiring underage drivers. See 29 U.S.C. § 212(c), (d) (2006). Further, it requires Ford and Nebraska to keep certain records regarding Brown's employment. See 29 U.S.C. § 211(c) (2006). It is clear to us that Ford and Nebraska are subject to regulation under the FLSA. Thus, they are not "employers" under the KMWMHL.

3. *If the FLSA takes Ford and Nebraska out of state wage and hour control, is Brown still entitled to KMWMHL overtime?*

Brown seems to argue that Ford and Nebraska are subject to regulation under both acts: the FLSA for its higher minimum wage, gender equality, and child labor provisions, etc., and the KMWMHL for its overtime pay guarantee. But reading the plain language of K.S.A. 44-1204(a) indicates otherwise.

Under K.S.A. 44-1204(a), only "employers" are required to pay overtime. The definition of "employer" in the KMWMHL excludes those employers "subject to" the FLSA. K.S.A. 44-1202(d). Because Ford and Nebraska are subject to FLSA regulation, they are not "employers" as that term is used in the KMWMHL. Because they are not "employers" under the KMWMHL, they owe their employees, including Brown, no duty to pay Kansas overtime wages under the plain language of K.S.A. 44-1204(a).

### FOREIGN CASES

Brown cites a host of cases in his brief which seem to support the result he advocates. However, careful consideration of these cases reveals distinctions which clarify and reinforce our reading of the KMWMHL.

Brown relies on *Berry v. KRTV Communications*, 262 Mont. 415, 865 P.2d 1104 (1993), which presents facts analogous to those now before us. Berry was a television news announcer and editor for a Montana television station. The district court denied Berry's claim for unpaid overtime pay based on the FLSA news announc-

ers and editors exemption, even though Berry based his claim on Montana's wage and hour law. Berry appealed. On appeal, KRTV argued that because it was an employer under the terms of the FLSA, its employees were covered by the FLSA by implication. Since its employees were FLSA employees, KRTV reasoned, the Montana wage and hour laws' FLSA-regulated-employees exemption prevented Berry from claiming overtime under Montana law.

The Montana Supreme Court rejected KRTV's position and reversed the ruling of the district court. The court determined that Montana had not adopted the FLSA announcer exemption into its wage and hour law. The court held that the FLSA did not preempt Montana from providing greater overtime protection than was available under the FLSA. 262 Mont. at 425-26. The relevant statute, Mont. Code Ann. § 39-3-408(1) (1993), read:

" 'The provisions of this part shall be in addition to other provisions now provided by law for the payment and collection of wages and salaries but shall not apply to employees covered by the' [FLSA, except that Montana may set a higher minimum wage.]" *Berry*, 262 Mont. at 420.

*Berry* is distinguishable from our case because the wage and hour statutes in Kansas and Montana are different. KRTV made the same basic argument Ford and Nebraska make here, *i.e.*, because an employer is subject to FLSA regulation, the state statute does not apply by its plain terms. However, while both Kansas and Montana utilize FLSA-regulated-employee exemptions in their respective wage and hour statutes, the Montana law contains no FLSA-regulated-employer exclusion comparable to K.S.A. 44-1202(d). The *Berry* court rejected KRTV's attempt to read the FLSA-regulated-employer exemption into Montana's wage and hour law. 262 Mont. at 420, 425-26.

Here, we need read nothing into the Kansas statute. K.S.A. 44-1202(d) expressly excludes from KMWMHL regulation any employers who are subject to regulation under the FLSA. Therefore, the "employers" who must pay overtime under K.S.A. 44-1204(a) do not include those employers who are subject to FLSA regulation. Because Ford and Nebraska are FLSA-regulated employers, they owe Brown no duty to pay overtime under the KMWMHL.

*Berry* holds that Montana's statute would not support the defense Ford and Nebraska advance here. But Kansas' law, because of K.S.A. 44-1202(d), does support this defense. Accordingly, *Berry* does not apply.

Brown cites *District of Columbia v. Schwerman Trucking Co.*, 327 A.2d 818 (D.C. Cir. 1974), and *Williams v. W.M.A. Transit Company*, 472 F.2d 1258 (D.C. Cir. 1972), as support for the proposition that the Kansas Legislature did not intend to include the interstate motor carrier exemption in the KMWMHL. In the District of Columbia cases, the courts noted that the D.C. municipal code followed the FLSA exemption list closely but omitted the bus driver exemptions, indicating Congressional intent to include bus drivers as employees eligible for overtime under the D.C. code. See *Schwerman*, 327 A.2d at 823-24. From this, Brown argues that the Kansas Legislature's failure to include truck drivers on a KMWMHL exemption list indicates legislative intent not to exclude truck drivers from overtime pay eligibility.

But Ford and Nebraska do not challenge Brown's claim on the basis of any KMWMHL *employee* exemption. Instead, the defendants here rely on the fact that our legislature excluded FLSA-regulated *employers* from compliance with the KMWMHL. The issue here is an employer exclusion, not an employee exemption. Further, as the *Dollison* court made clear, the FLSA exemption and the KMWMHL exemption do not need to be the same for an employer to avoid paying KMWMHL overtime pay. Here, Brown is exempt from FLSA overtime pay because of the FLSA's interstate motor carrier exemption, and Ford and Nebraska owe Brown no overtime pay under the KMWMHL because neither is an "employer" under K.S.A. 44-1202(d) and K.S.A. 44-1204(a). The issue here is the effect of K.S.A. 44-1202(d) on the mandate of K.S.A. 44-1204(a). *Schwerman* and *Williams* do not advance Brown's cause.

In *Goldberg v. Faber Industries, Inc.*, 291 F.2d 232 (7th Cir. 1961), discussed earlier in this opinion, the court was concerned with the applicability of the interstate motor carrier exemption contained in the FLSA. The court ruled that the actions of individual drivers determined the applicability of the exemption as to each

driver. See 291 F.2d at 234. Here, no one disputes that Brown is subject to the interstate motor carrier exemption. The issue is the applicability of the FLSA-regulated-employer exclusion in the KMWMHL. The object of inquiry under the FLSA-regulated-employer exclusion in Kansas law has everything to do with the nature of Ford's and Nebraska's businesses—because they are the alleged "employers"—and nothing to do with Brown or his job as an employee. In *Goldberg*, the appropriate object of analysis was the employees' job duties because the employees were the target of regulation. Here, the relevant KMWMHL provision targets the employers' business activities to determine KMWMHL coverage.

Brown's reliance on *Friedrich v. U.S. Computer Services, Inc.*, 1996 WL 32888 (E.D. Pa. 1996), is likewise misplaced. In that case, the relevant Pennsylvania wage and hour law excluded FLSA-covered employees only " 'to the extent' that they were 'subject to' the FLSA." 1996 WL 32888, at *5. This meant that the Pennsylvania law operated as a stopgap to the FLSA, and the statute apparently contained no FLSA-employer exemption. But here, the reach of the KMWMHL depends on the applicability of the FLSA to the employment relationship. See *Dollison*, 241 Kan. at 382. At least as it concerns overtime pay, the KMWMHL is not a stopgap measure like Pennsylvania's statute. Under the provisions of K.S.A. 44-1202(d) and K.S.A. 44-1204(c), if either the employer or the employee is subject to FLSA regulation, the Kansas law does not apply. *Friedrich*, like *Berry*, is based on a different statutory scheme and does not apply.

In *Santoni Roig v. Iberia Lineas Aereas de Espana*, 688 F. Supp. 810 (D. Puerto Rico 1988), the issue was whether the FLSA preempted a local wage and hour law. The court noted that 29 U.S.C. § 218 (1982) expressly disavows federal preemption of state laws which establish minimum wages or work weeks more beneficial to employees, so there was "no reason to exempt plaintiffs herein from the local minimum wages and overtime provisions on preemption grounds." 688 F. Supp. at 818. The court was silent on the subject of whether the employees in question were exempt from overtime pay under the local law's provisions.

Here, neither defendant argues that the FLSA preempts the KMWMHL. Instead, the issue is the scope the Kansas law sets for itself. In *Santoni Roig*, the employer asserted federal preemption to circumscribe state law. Ford and Nebraska defend on the ground that Kansas law, by its own terms, does not apply to them. Preemption is not at issue here.

A similar case cited by Brown is *Tidewater Marine Western, Inc. v. Bradshaw*, 14 Cal. 4th 557, 59 Cal. Rptr. 2d 186, 927 P.2d 296 (1996), which considered the preemption of admiralty law. Here, our sole focus is determining the scope of Kansas law under the clear terms of the KMWMHL. See *Dollison*, 241 Kan. at 382. Therefore, *Santoni Roig* and the other FLSA preemption cases Brown cites, *e.g.*, *Keeley v. Loomis Fargo & Co.*, 11 F. Supp. 2d 517 (D. N.J. 1998), *Plouffe v. Farm & Ranch Equip. Co.*, 174 Mont. 313, 570 P.2d 1106 (1977), *Dept. of Labor & Indus. v. Common Carriers*, 111 Wash. 2d 586, 762 P.2d 348 (1988), and, are irrelevant to our inquiry.

Finally, Brown cites *Masters v. City of Huntington*, 800 F. Supp. 369, 370 (S.D. W. Va. 1992), in which the federal district court found that municipal firemen were entitled to overtime under the more generous state law. The court found that the state wage and hour law included city firefighters because the South Dakota Supreme Court had ruled that such firefighters were employees of a "political subdivision," an employer category specifically omitted from the state wage and hour law's exclusions list and, therefore, by implication within the ambit of the state wage and hour law. 800 F. Supp. at 371. To the contrary, in the case now before us, FLSA-regulated employers are specifically excluded from KMWMHL compliance by our state statute. *Masters* does not advance Brown's cause.

### OTHER ARGUMENTS

Brown argues that when it comes to FLSA coverage, "exempt" and "exclude" are synonyms. However, a party may be exempt from certain aspects of the FLSA without being categorically or jurisdictionally excluded from the statute. For example, even though Ford and Nebraska are exempt from the overtime pay

requirements of the FLSA, they may not pay a driver lower wages based on gender, nor may they employ underage truck drivers, regardless of pay. They are not excluded from the FLSA just because they do not have to pay Brown overtime. However, because of their status as FLSA-regulated employers, they do not fall within the category of employers set forth in K.S.A. 44-1202(d) who are subject to the KMWMHL.

Brown also argues that KMWMHL overtime pay coverage should be determined from the employee's perspective. However, Brown relies on cases dealing only with FLSA coverage for this argument. As noted earlier in our discussion of *Goldberg v. Faber Industries, Inc.*, and *Schultz v. Poirier*, each of his cases predates the advent of enterprise coverage in 1961 and 1966. Before enterprise coverage was added to the FLSA, courts focused on an employee's actions to determine whether the FLSA applied. Now, however, the FLSA also takes an employer's transactions and annual revenue into account for determining FLSA jurisdiction. Likewise, the KMWMHL applies to an employer only if the employer is not already regulated by the FLSA. Therefore, the "employee perspective" argument does not advance Brown's position.

Brown argues extensively from the legislative history of the KMWMHL. Legislative history is a valuable tool in construing an unclear or ambiguous statute. However, the plain language of the statute is the controlling expression of the legislature's intent. *Hall v. Dillon Companies, Inc.*, 286 Kan. 777, 785, 189 P.3d 508 (2008). We do not resort to an examination of an enactment's legislative history if the statute's language is clear and unambiguous. See *Double M Constr. v. Kansas Corporation Comm'n*, 288 Kan. 268, 271-72, 202 P.3d 7 (2009). The KMWMHL, in clear and unambiguous terms, excludes employers from KMWMHL overtime compliance if either the employer or the employee is regulated by the FLSA. K.S.A. 44-1202(d); K.S.A. 44-1204(c)(1). Ford and Nebraska are subject to FLSA regulation.

We find no genuine issue of material fact which would preclude summary judgment. Based upon our de novo review, Ford and Nebraska are entitled to judgment on Brown's claims for relief

which have been brought pursuant to the KMWMHL. The district court was correct in so ruling.

Affirmed.