NOT DESIGNATED FOR PUBLICATION

No. 121,582

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RANDALL L. ALLEN,
*Appellant*,

v.

KANSAS ASSOCIATION OF COUNTIES,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; TERESA L. WATSON, judge. Opinion filed May 1, 2020.
Reversed.

*Alan V. Johnson*, of Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C., of Topeka, for
appellant.

*Larry G. Michel* and *Laurel A. Michel*, of Kennedy Berkley Yarnevich & Williamson, Chartered,
of Salina, for appellee.

Before ARNOLD-BURGER, C.J., GREEN and BUSER, JJ.

PER CURIAM: When parties fairly enter into a contract, the district court should
not seek loopholes and technical legal grounds to defeat the contract's intended purpose.
"'[T]he paramount public policy is that freedom to contract is not to be interfered with
lightly.'" *Idbeis v. Wichita Surgical Specialists, P.A.*, 279 Kan. 755, 770, 112 P.3d 81
(2005) (quoting *Weber v. Tillman*, 259 Kan. 457, 474, 913 P.2d 84 [1996]).

1

Randall L. Allen and the Kansas Association of Counties (KAC) entered into an employment agreement in August 2013. The agreement automatically renewed every year unless Allen provided adequate written notice of his resignation or the KAC provided adequate written notice of termination. The agreement also contained a severance payment clause; if the KAC terminated Allen without just cause, the KAC was obligated to pay Allen six months' severance pay.

Allen and the KAC renewed the contract for several years. But in October 2018, the KAC sent Allen written notice that his employment would end on December 31, 2018. The KAC refused to pay Allen severance pay. Allen sued KAC alleging breach of contract.

The KAC filed a motion to dismiss, which the district court granted. The district court held that the KAC was not obligated to pay Allen severance pay under the plain language of the contract. We disagree. A plain reading of the contract requires the KAC to pay Allen severance pay when it terminates the agreement without just cause. As a result, we reverse the district court's order granting KAC's motion to dismiss.

FACTUAL AND PROCEDURAL HISTORY

In 1996, the KAC hired Randall L. Allen to be its Executive Director. The parties entered into a written employment agreement in August 2013.

The agreement noted that the KAC desired to:

"1) . . . retain the services of [Allen] and provide inducement for him to remain in such employment, 2) . . . induce full work productivity by [Allen] by providing peace of mind with respect to future security; . . . and 5) . . . provide a just means for terminating [Allen's] services at such time as [Allen] may deem it prudent."

2

Under Section 2.A of the agreement, Allen agreed "to continue employment with [the KAC] and remain in the exclusive employ of [the KAC] until December 31, 2014, and neither to seek other employment nor to become employed by another employer until said termination date, unless said termination date is affected as hereinafter provided." A similar provision—2.B—relating to the KAC's rights stated: "Nothing in this agreement shall prevent, limit, or otherwise interfere with the right of [the KAC] to terminate the services of [Allen] at any time, subject only to the provisions set forth in Section 4, Paragraphs A and B, of this agreement."

The employment agreement was for a one-year term, but the agreement also contained a clause which addressed extending the employment agreement each year. Under Section 2.D:

"In the event written notice to terminate or resign, as the case may be, is not given by either party to this agreement to the other party sixty (60) days prior to the termination date as hereinabove provided, this agreement shall be automatically extended on the same terms and conditions as provided herein for an additional term of one year. Said agreement shall continue to be extended thereafter for additional one year terms on the same terms and conditions including the notice provision."

Section 4.A of the agreement addressed the possibility of Allen being compensated if his employment ended. Under what circumstances Allen would be entitled to compensation is the subject of this appeal. Section 4.A of the agreement stated:

"In the event [Allen] is terminated by [the KAC] for any reason other than for just cause, and during such time [Allen] is willing and able to perform the duties of Executive Director, [the KAC] agrees to pay [Allen] six (6) full months' salary, said payment to be made in the same manner as if [Allen] were still employed. . . . It is understood by the parties hereto that the provisions of this Section for severance pay do not apply if the employment relationship is terminated by reason of the death of or voluntary resignation by [Allen]."

3

Allen and the KAC renewed the agreement each year, until October 2018, without any changes to the sections discussed above.

On October 24, 2018, the KAC sent written notice to Allen informing him that the KAC would not renew his contract. According to the letter, the notice was "provided pursuant to Section 2.D. of the Employment Agreement dated August 23, 2013. Accordingly, your employment will end on December 31, 2018." The relevant text of the letter was quoted in Allen's initial petition.

The KAC placed Allen on paid leave in November 2018. Allen filed suit against the KAC on December 12, 2018. Allen claimed that the KAC breached the employment agreement by refusing to pay him six months' worth of his salary as severance pay under section 4.A. He also claimed he was entitled to compensation for his accrued vacation and sick leave. Allen sought an order of mandamus compelling the KAC to pay him what he believed he was owed under the contract, as well as attorney fees and damages. Finally, Allen alleged that the KAC's actions violated the Kansas Wage Payment Act. But this claim was apparently resolved in the district court, and Allen does not pursue it here.

The KAC moved to dismiss Allen's suit under K.S.A. 2019 Supp. 60-212(b)(6). The KAC's motion and memorandum in support attached the employment agreement and a paystub which included a payout for Allen's vacation and sick leave—neither of which were included in Allen's initial pleading.

Allen responded to the KAC's motion and argued, in part, that the motion must be treated as a motion for summary judgment because the KAC included evidence that was not included in the pleadings.

The district court considered the parties' arguments and determined that the KAC's motion could be treated as a motion to dismiss because it did not need to consult the

extraneous evidence to reach its decision. The district court agreed with the KAC, holding that Allen was not entitled to severance pay under the circumstances and dismissing Allen's suit. Allen timely appeals the district court's decision.

ANALYSIS

Allen raises one over-arching issue on appeal: whether the KAC is obligated to pay him severance pay after not renewing his employment contract. Answering this question requires interpretation of the employment agreement.

*Any way you look at it, our standard of review is de novo.*

As an initial matter, the parties argue about how the district court should have handled the KAC's motion to dismiss. Allen argues that because both parties included evidence outside the pleadings—the written notice of nonrenewal, employment agreement, and paystub—the court should have treated it as a motion for summary judgment. See *Brown v. Ford Storage and Moving Co.*, 43 Kan. App. 2d 304, 306-07, 224 P.3d 593 (2010) (summary judgment standard required when court considers facts beyond the face of the pleading in examining a motion to dismiss).On the other hand, the KAC believes the district court should have treated the motion to dismiss as a motion to dismiss.

The district court determined that it did not need to consider any of the extraneous evidence to rule on the merits and could treat the KAC's motion as a motion to dismiss. The court noted that even if it was to evaluate the motion under a summary judgment standard, the outcome would be the same. We agree.

5

Whether a district court erred by granting a motion to dismiss for failure to state a claim is a question of law subject to unlimited review. This court reviews the well-pleaded facts in a light most favorable to the plaintiff and assumes as true those facts and any inferences reasonably drawn from them. If those facts and inferences state *any* claim upon which relief can be granted, then dismissal is improper. *Cohen v. Battaglia*, 296 Kan. 542, 545-46, 293 P.3d 752 (2013).

That said, there is no factual dispute in this case. So even if we were treating this as a summary judgment motion, our standard of review is also de novo. See *Martin v. Naik*, 297 Kan. 241, 246, 300 P.3d 625 (2013) (de novo standard of review for summary judgment when there is no factual dispute).

Finally, whether Allen is entitled severance pay from the KAC is a question of contract interpretation. This court exercises unlimited review over the interpretation and legal effect of written instruments and is not bound by the lower court's interpretations or rulings. *Born v. Born*, 304 Kan. 542, 554, 374 P.3d 624 (2016). Whether a contract is ambiguous is a question of law subject to de novo review. *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 964, 298 P.3d 250 (2013).

So there can be no doubt that we review the issue at the heart of this case, whether Allen was entitled to severance pay, de novo. With that in mind, we turn to the question at issue.

*Allen was entitled to severance pay when his employment was terminated by KAC.*

"'The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction.'" *Peterson v. Ferrell*, 302 Kan. 99, 104, 349 P.3d 1269 (2015). Additionally, contractual provisions

6

should not be interpreted by isolating one particular sentence or provision. Instead, courts should consider the contract as a whole. "The law favors reasonable interpretations, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided.'" *Waste Connections of Kansas*, 296 Kan. at 963.

The plain language of the contract here indicates that Allen was entitled to severance pay when his employment ended. Sections 2.B and 2.C give the KAC and Allen the right to voluntarily and unilaterally end the employment agreement, subject to the other provisions of the contract. Section 2.A states that Allen agreed to continue employment with the KAC "and remain in the exclusive employ of [the KAC] until December 31, 2014, and neither to seek other employment nor to become employed by another employer until said *termination date*, unless said termination date is affected as hereinafter provided." (Emphasis added.) The contract listed December 31, 2014, as the termination date, and the date remained the same each year as the employment agreement carried over. Nothing in Section 2 gives either party the right to choose to "not renew" the contract. As the contract is written, it would continue in perpetuity until there was appropriate written notice of termination or resignation.

Under the plain language of the contract, Allen would be entitled to severance pay "[i]n the event [he was] terminated by [the KAC] for any reason other than for just cause, and during such time [he was] willing and able to perform the duties" of his job. The question then is whether the KAC terminated Allen by sending him written notice that the KAC would not be extending his contract and that his employment would end on December 31, 2018.

Section 2.D controlled the renewal of the employment agreement between the parties. Under that section, if

"written notice to terminate or resign, as the case may be, is not given by either party to this agreement to the other party sixty (60) days prior to the termination date as hereinabove provided, this agreement shall be automatically extended on the same terms and conditions as provided herein for an additional term of one year."

Under Section 2.D, the employment agreement between Allen and the KAC would continue to renew, every year, unless one party provided the other 60 or more days' written notice of termination or resignation. Section 2.D makes no reference to a decision to not extend the agreement. The agreement is either extended an additional year or comes to an end, on the termination date, by (1) the KAC electing to terminate or (2) Allen electing to resign.

Allen clearly did not resign. The KAC sent him written notice that it was electing to not renew his contract—in effect terminating his employment. In its brief, the KAC inadvertently acknowledges this by saying "Allen and the KAC each had the option to *terminate* the employee-employer relationship on December 31, 2014 by giving the other 60 days prior notice that they were choosing not to extend the employee-employer relationship beyond that contracted term, or in other words, that they were choosing to non-renew the Agreement." (Emphasis added.) Allen could have done so by resigning, which would not have triggered the severance pay provision. The KAC could only do so by terminating Allen. The plain language of the contract did not have an option for a separate "nonrenewal."

The district court reasoned that this was absurd, questioning: "Why would KAC ever give two months' notice to end the term of the contract, only to be required to pay Allen six months' severance pay on top of that?" But this court has acknowledged that severance pay generally serves two objectives: "(1) to protect employees from the economic hardship of joblessness and (2) to reward employees for past service." *A.O.*

8

*Smith v. Kansas Dept. of Human Resources*, 36 Kan. App. 2d 530, 537, 144 P.3d 760 (2005). Either objective could apply here.

A plain language reading of Section 2.D and 4.A does not seem so absurd that this court needs to twist the plain meaning of the employment agreement. See 36 Kan. App. 2d at 537. While it may seem odd that an employer could be required to give a 60-day notice that it was not renewing the employment agreement and still be required to pay six months' severance pay, parties generally may contract how they please. *Idbeis*, 279 Kan. at 770 (noting freedom to contract is not to be interfered with lightly); *Razorback Contractors v. Board of Johnson County Comm'rs*, 43 Kan. App. 2d 527, 540, 227 P.3d 29 (2010) (acknowledging that generally courts should not interfere with contracts made by competent parties).

The plain and unambiguous language of the employment agreement entitled Allen to six months' severance pay if he was terminated for any reason without just cause. The employment agreement has only two ways for the contract to stop automatically renewing each year:  termination or resignation. Allen did not resign; therefore, the KAC necessarily must have terminated him by sending him written notice that the employment agreement would not be renewed. Because Allen was terminated without just cause, while Allen was willing and able to continue as Executive Director, the KAC was obligated to pay him six months' severance under the terms of the employment agreement. The order of the district court granting KAC's motion to dismiss is reversed.

Reversed.